| | |
|---|---|
| VINSON & ELKINS LLP | PIRKEY BARBER PLLC |
| Jason M. Powers (SB# 24007867) | Louis T. Pirkey (SB# 16033000) |
| Allison L. Fuller (SB# 24087547) | Travis R. Wimberly (SB# 24075292) |
| 1001 Fannin Street, Suite 2500 | Tyson D. Smith (SB# 24079362) |
| Houston, TX 77002 | 1801 East 6th Street, Suite 300 |
| Telephone: (713) 758-2522 | Austin, TX 78702 |
| Facsimile: (713) 615-5809 | Telephone: (512) 322-5200 |
| Email: jpowers@velaw.com | Facsimile: (512) 322-5201 |
| Email: afuller@velaw.com | Email: lpirkey@pirkeybarber.com |
| | Email: twimberly@pirkeybarber.com |
| Rebecca L. Petereit (SB# 24062776) | Email: tsmith@pirkeybarber.com |
| Matthew D. Struble (SB# 24102544) | |
| Trammell Crow Center | |
| 2001 Ross Avenue, Suite 3700 | |
| Dallas, Texas 75201 | |
| Telephone: (214) 220-7700 | |
| Facsimile: (214) 220-7716 | |
| Email: rpetereit@velaw.com | |
| Email: mstruble@velaw.com | |

ATTORNEYS FOR HEB GROCERY COMPANY, LP

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | § | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| TODD MEAGHER | § | Case No. 20-40208-mxm11 |
| | § | |
| Debtor. | § | |

**HEB GROCERY COMPANY, LP'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO PROCEED WITH PRE-PETITION CLAIMS FOR INJUNCTIVE RELIEF**

**PURSUANT TO LOCAL BANKRUPTCY RULE 4001-1(b), A RESPONSE IS REQUIRED TO THIS MOTION, OR THE ALLEGATIONS IN THE MOTION MAY BE DEEMED ADMITTED, AND AN ORDER GRANTING THE RELIEF SOUGHT MAY BE ENTERED BY DEFAULT.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, RM. 1254, DALLAS, TEXAS 75242 BEFORE CLOSE OF BUSINESS ON FEBRUARY 26, 2020, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF. A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY AND ANY TRUSTEE OR EXAMINER APPOINTED IN THE CASE. ANY RESPONSE SHALL INCLUDE A DETAILED AND COMPREHENSIVE STATEMENT AS TO HOW THE MOVANT CAN BE "ADEQUATELY PROTECTED" IF THE STAY IS TO BE CONTINUED.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

HEB Grocery Company, LP ("*HEB*") hereby moves this Court to enter an order granting relief from the automatic stay provided by section 362 of Title 11 of the United States Code (the "*Bankruptcy Code*") to continue litigating its claims for trademark infringement and dilution against the above-captioned debtor and debtor in possession, Todd Meagher (the "*Debtor*"), and seeking injunctive relief in the case captioned *HEB Grocery Company, LP v. Todd Meagher et al.*, Case No. 4:17-cv-02810, which is currently pending in the United States District Court for the Southern District of Texas before the Honorable Judge Lynn Hughes (the "*Southern District Litigation*"). In support of this Motion, HEB respectfully states as follows:

## I. PRELIMINARY STATEMENT

1. Pursuant to section 362 of the Bankruptcy Code, a voluntary petition for relief under Chapter 11 operates as a stay of the continuation of a judicial action against the debtor that was filed before the commencement of the bankruptcy proceeding. According to the legislative history, the purpose of the automatic stay is prevent harassment of the debtor with respect to pre-petition claims and to prevent dissipation of the debtor's assets before orderly distribution to all creditors can be effected.[1] While the scope of the stay is broad, it is not absolute, and there are a number of statutory exceptions that exempt certain proceedings from its operation, including where necessary "to prevent the bankruptcy court from becoming a haven for wrongdoers."[2]

---

[1] *See* H.R. Rep. No. 95-595, 95th Cong., 2d Sess. 340 (1978) ("[The automatic stay] gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. . . . The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly [reorganization or] liquidation procedure under which all creditors are treated equally.").

[2] *See, e.g.*, *In re First All. Mortg. Co.*, 263 B.R. 99, 109 (B.A.P. 9th Cir. 2001) (discussing the statutory exception under section 362(b)(4), which allows the continuation of proceedings by a governmental unit against a debtor in order to stop violation of fraud, environmental protection, consumer protection, and safety).

Moreover, under section 362 of the Bankruptcy Code, bankruptcy courts are authorized to grant relief from the stay where a party in interest shows cause.

2. Here, HEB seeks relief from the automatic stay to continue its long-pending litigation against the Debtor[3] for trademark infringement of HEB's incontestable registrations for its marks: MI TIENDA and MI TIENDA and design (together, the "*MI TIENDA Marks*").[4] As described below, this bankruptcy—filed while a summary judgment motion against the Debtor was pending and ripe for decision—represents at least the fourth attempt by the Debtor to oust Judge Hughes from deciding the Southern District Litigation. HEB is not seeking monetary damages from the Debtor in the Southern District Litigation, which has been pending for two and a half years, and continuing the litigation will not work any inequity against the Debtor or interfere with the orderly reorganization of his estate. Accordingly, HEB prays that the Court lift the automatic stay so that HEB may proceed with the Southern District Litigation and pursue injunctive remedies against the Debtor for violations of the federal Lanham Act.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Relevant Parties and Trademark Registrations

3. HEB is a retailer engaged in the sale of groceries and other consumer products. It has owned and used the MI TIENDA Marks for years in connection with retail grocery store services and related products, including operating two Houston-area grocery stores named "Mi Tienda" and selling various food products under the "Mi Tienda" label. (The English translation of the Spanish words "mi tienda" is "my store.") The Debtor, his family members, and the

---

[3] As detailed further below, the Southern District Litigation involves claims against the Debtor in this action, as well as two non-debtor defendants: (1) the Debtor's wife, Irene Alexis Meagher, and (2) their company MyStore, Inc.

[4] HEB is the owner of the following two United States Trademark Registrations for the MI TIENDA Marks, each of which is valid, subsisting, and incontestable pursuant to 15 U.S.C. § 1065: Reg. No. 3,319,834 (MI TIENDA) and Reg. No. 3,337,015 (MI TIENDA and design). *See* Exhibit 1 attached hereto.

companies he owns have used, or planned to use, the similar marks MYSTORE, MYSTORE.COM, and MITIENDA (the "*MYSTORE Marks*")[5] in connection with an online marketplace for selling or promoting goods or services, including food and food-related items.

4.  On September 21, 2015, Mr. Meagher filed Application Serial Nos. 86/763,412 and 86/763,399 with the U.S. Patent and Trademark Office ("*PTO*") seeking registration of the marks MYSTORE and MYSTORE.COM.[6] (Mr. Meagher had registered similar marks in the past, but the registrations lapsed due to Mr. Meagher's failure to file proof that he was using the marks as of 2015.[7]) HEB opposed Mr. Meagher's trademark applications at the Trademark Trial and Appeal Board ("*TTAB*") on March 16, 2016, based on their similarity to HEB's existing MI TIENDA Marks. While that application and opposition were pending, on May 24, 2017, Mr. Meagher filed additional applications for MYSTORE (Serial No. 87/462,085) and MYSTORE (Stylized) (Serial No. 87/462,127),[8] but a few months later, in September 2017, he abandoned both his 2015 applications and his 2017 applications.[9] One day after Mr. Meagher abandoned his applications, on September 14, 2017, Todd Meagher's wife, Irene Alexis Meagher, filed Application Serial Nos.

---

[5] The marks MYSTORE and MYSTORE.COM are the English equivalent of HEB's MI TIENDA Marks.

[6] *See* Exhibit 2.

[7] On February 17, 2009, the PTO issued trademark registrations for the marks MYSTORE (Reg. No. 3,577,991) and MYSTORE.COM (Reg. No. 3,577,992) to Todd Meagher. *See* Exhibit 2. Pursuant to Section 8 of the Lanham Act, 15 U.S.C. § 1058(a)(1), after five years, Mr. Meagher was required to file an Affidavit of Continued Use to maintain the marks, but did not do so. The statute provides a one-year period during which the owner of a trademark registration is required to file the Affidavit of Continued Use ("*Section 8 Affidavit*"). In this case, Mr. Meagher was required to file the Section 8 Affidavit for Reg. Nos. 3,577,991 and 3,577,992 between February 17, 2014, and February 17, 2015. No Section 8 Affidavit was filed by the February 2015 deadline. Nevertheless, the statute also provides a six-month "grace period," during which Mr. Meagher was still permitted to file the Section 8 Affidavit to maintain the marks. Mr. Meagher also failed to file the required affidavit prior to the end of the grace period, which expired on August 17, 2015. Accordingly, on September 18, 2015, the PTO cancelled Mr. Meagher's registrations for MYSTORE and MYSTORE.COM for failure to file a Section 8 Affidavit.

[8] *See* Exhibit 2.

[9] Mr. Meagher withdrew the first set of applications (Serial Nos. 86/763,412 and 86/763,399), which were the subject of the TTAB proceeding, on September 13, 2017. *See* Exhibit 2. Mr. Meagher abandoned the second set of applications (Serial Nos. 87/462,085 and 87/462,127) on September 14, 2017. *See id.*

87/609,013 and 87/608,983 with the PTO seeking registration of the marks MITIENDA and MYSTORE.[10]

### B. The Southern District Litigation

5. Due to the Meaghers' repetitious and shifting applications for registration marks similar to HEB's MI TIENDA Marks, HEB filed the Southern District Litigation alleging violations of the Lanham Act and related state law claims. The complaint in the Southern District Litigation was filed by HEB on September 19, 2017, and alleges claims of trademark infringement, unfair competition, dilution, and unjust enrichment against Todd Meagher, Irene Alexis Meagher, and the Meaghers' company, MyStore, Inc. ("*MyStore*") (collectively, the "*Southern District Defendants*"), based on the defendants' unauthorized use of the MYSTORE Marks.[11]

6. Through the Southern District Litigation, HEB seeks to permanently enjoin and restrain the Debtor, his spouse, and their companies and related parties from using the MYSTORE Marks, and any other mark, trade name, corporate name or domain name that is confusingly similar to or likely to dilute the distinctive quality of the MI TIENDA Marks, and from any attempt to retain any part of the goodwill misappropriated from HEB.[12] While HEB pleads its entitlement to attorney's fees under the Lanham Act, HEB does not seek monetary damages from the Debtor or the other defendants in the Southern District Litigation.

7. In December 2017, the Southern District Defendants answered HEB's complaint and asserted a number of counterclaims, which were subsequently amended in September 2018.

---

[10] Mrs. Meagher abandoned the application for MITIENDA on January 22, 2018, and abandoned the application for MYSTORE on May 1, 2018. *See* Exhibit 3.

[11] HEB filed its First Amended Complaint, which is the operative complaint in the Southern District Litigation, on October 27, 2017, prior to service of the summonses on the Southern District Defendants. S.D. Litig., Dkt. 5.

[12] *See* S.D. Litig, Dkt. 5 at 7.

In particular, the Southern District Defendants sought a declaratory judgment of non-infringement of HEB's MI TIENDA Marks, and asserted counterclaims for "trademark bullying," business disparagement, malicious civil prosecution, and cancellation of HEB's marks,[13] some of which were similar to counterclaims Mr. Meagher had asserted and abandoned in the earlier TTAB proceeding.[14] On September 21, 2018, HEB filed motions to dismiss the Southern District Defendants' amended counterclaims and to strike their affirmative defenses. Following the close of discovery in the Southern District Litigation, HEB filed a motion for summary judgment on its affirmative claims and against Defendants' counterclaims on February 22, 2019.

8. Meanwhile, in January 2019, the Southern District Defendants again sought leave to amend their counterclaims to add an additional counterclaim for cancellation of HEB's trademark registrations.[15] HEB opposed on grounds of undue delay and unfair prejudice in raising the new claim after the close of discovery.[16] On June 18, 2019, Judge Hughes denied the Southern District Defendants' motion for leave to amend and add a new claim for cancellation.[17]

### C. Attempts by the Debtor and His Spouse to Move the Dispute Out of the Courts

9. More than a year after the Debtor abandoned his MYSTORE trademark applications and caused HEB to file the Southern District Litigation, the Debtor filed yet another application with the PTO to register the mark MYSTORE (Serial No. 88/216,119) on December 4, 2018. HEB filed an opposition to that application and moved to suspend the trademark

---

[13] S.D. Litig., Dkt. 74.

[14] As described above, in 2016, HEB and Mr. Meagher were parties to an opposition proceeding in the TTAB following cancellation of Mr. Meagher's MYSTORE and MYSTORE.COM registrations by the PTO in September 2015. In that opposition proceeding, Mr. Meagher asserted counterclaims for cancellation of HEB's MI TIENDA Marks on genericness grounds. Mr. Meagher subsequently withdrew those counterclaims, and the TTAB issued an order dismissing Mr. Meagher's counterclaims with prejudice in 2018. *See* Exhibit 4.

[15] S.D. Litig., Dkt. 127.

[16] S.D. Litig., Dkt. 128.

[17] S.D. Litig., Dkt. 231.

opposition proceeding on the grounds that the parties were already engaged in the Southern District Litigation, the resolution of which would bear directly on the claims and issues involved before the TTAB. On August 12, 2019, the TTAB granted HEB's motion for suspension pending final determination of the Southern District Litigation.[18]

10. During the same timeframe, on March 25, 2019, the Debtor's spouse filed a new petition for cancellation of HEB's MI TIENDA registration (Reg. No. 3,319,834) at the TTAB, making arguments she was already advancing in the Southern District Litigation.[19] On May 8, 2019, HEB responded to Mrs. Meagher's petition for cancellation by filing a motion for summary judgment and alternative motion to dismiss with the TTAB. That administrative proceeding remains active, but has been suspended pending a determination on HEB's dispositive motions.[20]

D. **The Debtor's Attempts to Oust the Southern District Court of Jurisdiction**

11. The Debtor and his related parties have made multiple attempts to move this dispute out of Judge Hughes's Southern District courtroom, all of which have failed thus far. On August 21, 2019, two months after the TTAB stayed his spouse's cancellation claim and one month after Judge Hughes denied the Debtor's request to add a new cancellation claim, Debtor Todd Meagher caused his company GHER Solutions, LLC ("*GHER*") to file a new complaint for declaratory judgment and cancellation of HEB's MI TIENDA Marks in the United States District Court for the Northern District of Texas in Fort Worth.[21] At the same time, Debtor Todd Meagher filed a motion to stay the Southern District Litigation pending the outcome of the Northern District

---

[18] *See* Exhibit 5.

[19] *See* Exhibit 6 at ¶¶ 43–45. Mrs. Meagher filed an amended petition to cancel HEB's MI TIENDA registration, alleging the same grounds for cancellation, on April 2, 2019.

[20] *See* Exhibit 7.

[21] *GHER Solutions, LLC v. HEB Grocery Company, LP*, Case No. 4:19-cv-655-O (the "*Northern District Litigation*").

7

Litigation.[22] HEB opposed the motion on the basis that the Southern District Litigation was related to and had precedence over the second-filed Northern District Litigation.[23] The Southern District court denied Mr. Meagher's motion to stay on September 24, 2019, and set a summary judgment hearing for December 4, 2019.[24] At the hearing, Judge Hughes issued summary judgment rulings dismissing the counterclaims asserted by the Southern District Defendants, but he has not yet ruled on HEB's affirmative claims.[25]

12. Following the summary judgment hearing, the Northern District Litigation brought by GHER was transferred and consolidated with the Southern District Litigation. HEB moved to dismiss GHER's claims, but prior to the Southern District court ruling on the motion, GHER filed a notice voluntarily dismissing the transferred claims without prejudice on January 14, 2020.[26]

13. During this same time period, shortly after the Northern and Southern District Litigations were consolidated, MyStore, an entity owned by the Debtor, filed a motion for recusal of Judge Hughes in the Southern District Litigation on the basis of supposed partiality. On January 14, 2020, the district court issued an order denying the motion and noting that the "defendants [we]re creating an issue because they feel like the case is not going their way."[27]

**E.   The Debtor's Voluntary Petition for Bankruptcy**

14. On January 15, 2020, the day after GHER voluntarily withdrew its action for declaratory judgment and the district court issued an order denying MyStore's motion for recusal, Todd Meagher, the founder and controlling person of both entities (GHER and MyStore), filed the

---

[22] S.D. Litig., Dkt. 252.
[23] S.D. Litig., Dkt. 254.
[24] S.D. Litig., Dkts. 255 & 256.
[25] S.D. Litig., Dkts. 275 & 276.
[26] S.D. Litig., Dkt. 280.
[27] S.D. Litig., Dkt. 281.

8

above-captioned bankruptcy case (this "*Chapter 11 Case*") in the United States Bankruptcy Court for the Northern District of Texas. In conjunction therewith, Mr. Meagher also filed a notice in the Southern District Litigation advising that the lawsuit was stayed as a result of the filing of the Chapter 11 Case and could no longer be prosecuted.

15. On January 22, 2020, the Debtor filed an application for approval to employ special litigation counsel with this Court, requesting that Thompson Coe (counsel for the Debtor in the Southern District Litigation) be approved on the basis that the Debtor would be moving to transfer the Southern District Litigation to this Court and that counsel was needed to "assist with the removal and transfer proceedings in the District Court for the Southern District of Texas."[28]

### III. LEGAL STANDARD

16. Section 362(d) of the Bankruptcy Code provides, in relevant part:

(d) [T]he court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

    (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d). "Cause" as used in section 362(d)(1) has no clear and limited definition and, therefore, is determined on a case-by-case basis. Courts have held that "cause" is an intentionally broad and flexible concept that permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations. *See In re Texas State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995) (internal citation omitted); *see also Bonneville Power Admin. v. Mirant Corp.* (*In re Mirant Corp.*), 440 F.3d 238, 253 (5th Cir. 2006) ("[I]n the past we have noted that this lack of definition [of 'cause' in the Bankruptcy Code] affords 'flexibility to the bankruptcy courts.'"

---

[28] *See* Dkt. 17 at ¶7.

9

(quoting *Little Creek Dev. Co. v. Commonwealth Mortg. Corp.* (*In re Little Creek Dev. Co.*), 779 F.2d 1068, 1072 (5th Cir. 1986))).

17. In evaluating whether to provide relief from the automatic stay, courts generally weigh whether such relief will interfere with the bankruptcy case and the proportionality of harms to the movants, the debtor, and other creditors from lifting or continuing the stay. *See, e.g.*, *In re Choice ATM Enters., Inc.*, No. 14-44982-DML, 2015 WL 1014617, at *3 (Bankr. N.D. Tex. Mar. 4, 2015); *see also Mooney v. Gill*, 310 B.R. 543, 546 (N.D. Tex. 2002) (requiring bankruptcy courts evaluating cause to "balance the hardships of the parties and base a decision on whether to modify the automatic stay on the degree of hardship involved and the goals of the Bankruptcy Code").

18. In the Second Circuit, courts have identified twelve factors, known as the *Sonnax* factors, that are considered in determining whether cause exists for granting relief from the automatic stay to permit pending litigation to proceed outside of the bankruptcy court, including: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on

the parties and the balance of harms. *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990). These factors have been cited favorably by bankruptcy courts in Texas. *See, e.g.*, *In re Trust*, 526 B.R. 668, 682 (Bankr. N.D. Tex. 2015).

19. As demonstrated below, the relevant factors in this case weigh heavily in favor of allowing HEB to continue litigating its trademark infringement claims against the Debtor and the other Southern District Defendants in the Southern District of Texas.

### IV. ARGUMENT

#### A. The automatic stay does not shield a debtor's improper use of trademarks.

20. Under the current circumstances, lifting the automatic stay to continue the Southern District Litigation will not prejudice the Debtor's estate. In particular, because HEB seeks to continue to prosecute its claims against the Debtor and the other Southern District Defendants in order to obtain an injunction barring their use of HEB's trademark registrations for its MI TIENDA Marks, rather than to obtain a monetary judgment against the Debtor, the continuation of the pre-petition lawsuit will not negatively impact the effective reorganization of the Debtor's estate. On the other hand, continuation of the stay will result in hardship to HEB and will work an injustice by allowing the Debtor to continue to commit torts under the protection of the automatic stay, in violation of its purpose. *Cf., e.g.*, *In re Cinnabar 2000 Haircutters, Inc.*, 20 B.R. 575, 577 (Bankr. S.D.N.Y. 1982) (noting that "the bankruptcy laws should not be a haven for contumacious conduct in violation of a party's judicially-determined tradename rights which will be diluted by a continuation of such conduct behind the shield of the automatic stay").

21. Courts that have examined the issue have found that the automatic stay was not intended to apply to a judicial proceeding to enjoin unlawful conduct by the debtor. For instance, in *Dominic's Restaurant of Daytona, Inc. v. Mantia*, 683 F.3d 757 (6th Cir. 2012), the Sixth Circuit found that a civil contempt proceeding and the injunctions on which the contempt was based

should be allowed to proceed despite the automatic stay. There, the debtor had previously been enjoined from using the name and graphics of restaurant owners that were suing the debtor for trademark infringement and dilution claims. The restaurant owners filed a series of contempt motions against the debtor for violating the preliminary injunction, in the midst of which the debtor filed for personal bankruptcy. The district court declined to stay the judgments against the debtor, and the Sixth Circuit affirmed, finding that the stay "protects interests in a debtor's property, not tortious uses of that property by the debtor." *Id.* at 760 (internal citation omitted). The court stated:

> The automatic stay provision was intended to prevent interference with a bankruptcy court's orderly disposition of the property of the estate, it was not intended to preclude post-petition suits to enjoin unlawful conduct. If this section were read to prevent the injunctive relief against mark infringement sought here, bankrupt businesses which operated post-petition could violate plaintiffs' rights with impunity. . . . Because this matter involves [the debtor]'s use of the restaurant to commit a tort, specifically the tort of trademark and service mark infringement, application of the automatic stay would permit [the debtor] to continue to commit this tort. [The debtor]'s commission of a tort is not protected by the Bankruptcy Code.

*Id.* 760–61 (internal alterations and quotation marks omitted).

      **B.**    **The relevant *Sonnax* factors demonstrate that cause exists to allow HEB to continue prosecuting pre-petition claims for injunctive relief.**

22. Moreover, the relevant *Sonnax* factors weigh heavily in favor of granting HEB relief from the automatic stay under the present circumstances. In particular, the Southern District Litigation, which has been extensively litigated for over two and a half years, should be permitted to continue upon examination of factors 1, 2, 4, 10, 11, and 12.

23. The first *Sonnax* factor weighs in HEB's favor because relief from the stay will result in complete resolution of the action. As described above, the Southern District Litigation has been extensively litigated, and all of the Southern District Defendants' counterclaims against HEB have previously been denied or withdrawn. Accordingly, the only remaining claims in that litigation concern whether the Southern District Defendants have violated HEB's federal

trademark rights. These issues have been fully briefed on motions for summary judgment and are ripe for adjudication. Permitting the action to proceed will thus fully resolve whether the Southern District Defendants' conduct infringes the MI TIENDA Marks and whether the Southern District Defendants will be enjoined from further infringing uses.

24. Similarly, the second *Sonnax* factor—lack of connection with or interference with the bankruptcy case—weighs in HEB's favor because HEB is not seeking any economic damages for the Southern District Defendants' trademark infringement, and thus allowing the claims to proceed does not deplete the Debtor's estate. *See, e.g.*, *In re Hillenbrand*, Case. No. 09-75574-R (E.D. Mich. Bankr. Feb. 2, 2010) (lifting the automatic stay to allow a purchaser seeking injunctive relief against a debtor alleged to have violated a covenant not to compete and holding that "compliance with the injunction does not require any expenditure of money. It only requires that the debtor cease violating the terms of the covenant not to compete."); *Seiko Epson Corp. v. Nu-Kote Intern., Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1999) ("[P]roceedings that do not threaten to deplete the assets of the debtor need not be stayed.").

25. Additionally, factors four and ten—whether the district court has specialized expertise and whether relief from the stay advances judicial economy—both favor HEB. As courts have often recognized, factor ten is so critical that the decision to lift the stay may be upheld on judicial economy grounds alone. *See In re United States Brass Corp.*, 176 B.R. 11, 13 (Bankr. E.D. Tex. 1994) (citing *In re Kemble*, 776 F.2d 802, 807 (9th Cir. 1985)). Here, the Southern District is the most appropriate and efficient forum to determine the trademark infringement claims because (1) the claims concern "the application of federal and state intellectual property law," (2) Judge Hughes is already "well-versed with the facts, issues and parties in that action after two years of litigation," (3) discovery has been completed in the district court action, and (4) the

Southern District Court is prepared to conduct a jury trial. *See In re Consol. Distributors, Inc.*, No. 13-40350 (NHL), 2013 WL 3929851, at *11 (Bankr. E.D.N.Y. July 23, 2013) (granting the movant's motion to lift the stay to allow pending trademark dispute to proceed where the case had been pending for over two years).

26. Indeed, following the Southern District court's ruling on the pending summary judgment motion, the action will either be fully resolved, or will proceed to trial. Thus, factor eleven—whether the parties are ready for trial in the other proceeding—also weighs in favor of HEB.

27. Finally, factor twelve weighs in favor of lifting the stay because the impact on the Debtor's estate and creditors of lifting the stay and allowing the Southern District Litigation to proceed is negligible compared to the potential harm to HEB of allowing the Debtor's trademark infringement to continue unimpeded for the duration of this Chapter 11 Case. Nor should the Debtor be permitted to use the automatic stay as a litigation tool to avoid a ruling on a dispositive motion that has been fully briefed and is ripe for adjudication. *See, e.g.*, *In re Young*, No. 06-80397 G3-7, 2006 WL 3088225, at *3 (Bankr. S.D. Tex. Oct. 20, 2006) (finding cause to lift the stay to allow the movant to proceed with the prosecution and resolution of pending dispositive motions in state court).

V. **CONCLUSION**

28. For the foregoing reasons, HEB respectfully requests that the Court enter an order finding that cause exists to grant relief from the automatic stay to allow HEB to continue its claims in the Southern District Litigation against the Debtor and the other Southern District Defendants, where such claims have been fully briefed on summary judgment and HEB is not seeking a judgment of monetary damages against the Debtor.

Respectfully submitted,

| | |
|---|---|
| */s/  Rebecca L. Petereit* | /s/  *Louis T. Pirkey* |
| VINSON & ELKINS LLP | PIRKEY BARBER PLLC |
| Jason M. Powers | Louis T. Pirkey |
| State Bar No. 24007867 | State Bar No. 16033000 |
| Allison L. Fuller | Travis R. Wimberly |
| State Bar No. 24087547 | State Bar No. 24075292 |
| 1001 Fannin Street, Suite 2500 | Tyson D. Smith |
| Houston, TX  77002 | State Bar No. 24079362 |
| Telephone:  (713) 758-2522 | 1801 East 6th Street, Suite 300 |
| Facsimile:  (713) 615-5809 | Austin, TX  78702 |
| jpowers@velaw.com | Telephone:  (512) 322-5200 |
| afuller@velaw.com | Facsimile:  (512) 322-5201 |
| | lpirkey@pirkeybarber.com |
| Rebecca L. Petereit | twimberly@pirkeybarber.com |
| State Bar No. 24062776 | tsmith@pirkeybarber.com |
| Matthew D. Struble | |
| State Bar No. 24102544 | |
| Trammell Crow Center | |
| 2001 Ross Avenue, Suite 3700 | |
| Dallas, Texas 75201 | |
| Telephone: (214) 220-7700 | |
| Facsimile: (214) 220-7716 | |
| rpetereit@velaw.com | |
| mstruble@velaw.com | |

***Attorneys for HEB Grocery Company, LP***

## CERTIFICATE OF CONFERENCE

I hereby certify that on February 12, 2020, the undersigned counsel for HEB Grocery Company, LP attempted to contact counsel for the Debtor to confer regarding the relief requested herein both by electronic mail and telephone. At the time of this filing, counsel for HEB has not received a response from the Debtor's counsel indicating whether their client is opposed to the foregoing motion.

 */s/ Jason M. Powers*
Jason M. Powers

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2020, a true and correct copy of the foregoing was served on all parties entitled to service via this Court's Electronic Filing System, or otherwise by first class mail.

 */s/ Matthew D. Struble*
Matthew D. Struble