Stephanie D. Curtis
Texas State Bar No. 05286800
Mark A. Castillo
Texas State Bar No. 24027795
Christopher L. Harbin
Texas State Bar No. 24083134
Robert C. Rowe
Texas State Bar No. 24086253
Curtis | Castillo PC
901 Main Street, Suite 6515
Dallas, Texas 75202
Telephone: 214.752.2222
Facsimile: 214.752.0709

COUNSEL FOR DEBTOR IN POSSESSION

Gary L. Pate
Texas State Bar No. 24029763
Thompson Coe, Cousins, & Irons, LLP
1 Riverway, Suite 1400
Houston, Texas 77056
Telephone: 713.358.6779
Facsimile: 713.403.8299

PROPOSED SPECIAL LITIGATION COUNSEL FOR
DEBTOR IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CHAPTER 11 |
| | § | |
| TODD MEAGHER, | § | CASE NO. 20-40208-11 |
| | § | |
| DEBTOR. | § | |

**CHAPTER 11 DEBTOR'S RESPONSE TO HEB GROCERY
COMPANY, LP'S MOTION FOR RELIEF FROM AUTOMATIC STAY**

**TO THE HONORABLE MARK X. MULLIN,
UNITED STATES BANKRUTPCY JUDGE:**

NOW COMES TODD MEAGHER ("Meagher" or "Debtor"), the Debtor-in-Possession in the above-captioned Chapter 11 case (the "Bankruptcy Case"), and respectfully files this Response to the Motion filed by HEB GROCERY COMPANY, LP ("HEB" or "Movant") for relief from the automatic stay of litigation (the "Motion") [Dkt. No. 22] and would show the following:

**I. INTRODUCTION**

1. HEB has pursued a scorched earth litigation strategy against Mr. Meagher for the past two years simply because he owns a trademark that HEB wants for its own business plans. Now, having litigated Mr. Meagher into bankruptcy, HEB asks for a resumption of hostilities. Todd

Meagher respectfully asks the Court to deny the Motion. Lifting the automatic stay would frustrate the purpose of this reorganization and deny Mr. Meagher the breathing spell he needs to successfully navigate his way through this bankruptcy process.

## II. SUPPORTING EVIDENCE

2. Debtor's Response is supported by the following evidence, which is attached hereto and incorporated herein by reference:

> Exhibit A: Declaration of Todd Meagher (the "Meagher Declaration") including all of the following sub-exhibit(s):
>
> > Ex. A-1: Michael J. Lindell deposition (the "Lindell Dep."); and
> >
> > Ex. A-2: Consumer Likelihood of Confusion Survey Report.

## II. FACTUAL BACKGROUND

### A. Meagher's IP assets

3. Todd Meagher has been a software developer and Internet business entrepreneur since 1994. He also owns several patents and trademarks, many of which are highly valuable due to the limited availability and intense competition for ownership of website domain names. As such, Meagher regularly markets and sells his intellectual properties to other entrepreneurs. Ex. A-1, ¶ 2.

4. In 2005, Meagher created an application (or a "widget") for the MySpace social media network. Dubbed "MyStore," the widget enabled a visitor of a MySpace profile to access external web content pertaining to the profile's owner without navigating away from the profile itself. So, for example, a user could visit her favorite band's MySpace profile and then use the MyStore widget to purchase the band's merchandise directly from its MySpace profile. *Id.*, ¶ 5.

5. Since 2005, Meagher has continuously used MyStore trademark, thereby enjoying common law trademark rights to MyStore for the entirety of that 19-year span. *See id.* Meagher registered his trademark with the U.S. Patent & Trademark Office ("USPTO") in 2009.[1]

6. In addition to the MyStore trademark, there is a domain name: www.MyStore.com. The MyStore.com domain name was owned by GHER Solutions, LLC until 2018 when it sold the domain for $400,000 to a company owned by Michael J. Lindell, a Minnesota entrepreneur who plans to use the MyStore.com domain name to host an online marketplace that can compete with Amazon. *See* Ex. A, ¶ 7; Ex. A-1, Lindell Dep., 62:22-63:1; *see also* Lindell Dep., Ex. 5 (Interrogatories), Interrog. No. 1.

7. To realize his business plan, Lindell also wants to purchase the MyStore trademark from Meagher and has stated he would be willing to pay as much as $800,000 for it. *See* Ex. A-1 at 67:13-25. Meagher is considering, among other things, including the sale of this asset to Lindell as part of his Chapter 11 reorganization plan. Ex. A, ¶ 10. As such, the mark has an outsized importance to his reorganization plans and it dwarfs the value of other resources available to satisfy creditors. *See* Dkt. No. 23 (Scheds. A/B).

**B.** **Southern District Litigation**

8. In September 18, 2015, Meagher's PTO registration of the MyStore trademark lapsed due to a minor paperwork oversight which he corrected three days later by registering the mark again.[2]

---

[1] USPTO Serial No. 78853866 (Reg. No. 3577992 of MyStore, a goods and services mark for "[a]dvertising and information distribution services […] providing on-line computer databases and on-line searchable databases featuring classified listings and want ads.").

[2] USPTO Serial No. 86763399.

9.  HEB, however, appeared to contest the re-registration after having made no claim on the mark nor any objection to Meagher's ownership of it during the preceding 10 years. HEB claimed that, because it operated a spin-off chain of grocery stores called "Mi Tienda" (Spanish for "My Store"), there is a likelihood of confusion between Meagher's online merchandising MyStore mark and HEB's Mi Tienda grocery mark.[3]

10. On September 19, 2017, after unsuccessfully contesting Meagher's trademark in a two-year administrative battle at the USPTO and Trademark Trial and Appeal Board ("TTAB"), HEB filed a complaint in the U.S. District Court for the Southern District of Texas, suing Todd Meagher on various claims trademark infringement claims. HEB also sued Mr. Meagher's wife, Irene Alexis Meagher, and her company, MyStore Inc.

### III.  ARGUMENTS & AUTHORITIES

#### A.  Movant did not make a good faith effort to confer prior to filing.

11. This point will not be belabored but it deserves mention. While HEB can accurately describe the purpose of the automatic stay—to provide "a breathing spell" to the Debtor—it could not bring itself to afford Debtor such benefit. In its haste to push this Motion, HEB failed to make a genuine effort to confer with the Debtor, filing the Motion less than three hours after its first conference attempt. *See* L.B.R. 4001-1(a) (a party seeking to lift the automatic stay must certify that "good faith settlement discussions have been held" or explain the lack thereof). Movant's counsel called Debtor's counsel at 2:00 p.m., sent an e-mail to Debtor's counsel at 2:07 p.m., then filed the Motion 4:36 p.m. before Debtor's counsel had even been able to reach their client. In fact, HEB brought this Motion before Meagher had even managed to file

---

[3] The more plausible explanation is that HEB simply wanted the mark for itself as part of a 2015 campaign to establish itself in the online marketplace. *See, e.g.,* George Anderson, "Will H-E-B repeat its brick & mortar success online?", RetailWire, Nov. 13, 2015, https://retailwire.com/discussion/will-h-e-b-repeat-its-brick-and-mortar-success-online/ ("[HEB] is looking to replicate its brick & mortar success online with newly launched e-commerce capabilities.").

his Schedules and Statement of Financial Affairs or attended his Creditors' Meeting. *See* Dkt. Nos. 22 (HEB's Motion), 23-24 (Schedules & SOFA).

B.  **Correcting the record.**

12.  HEB's lead argument, that the automatic stay "does not shield a debtor's improper use of trademarks", rests on presumption and misplaced reliance on irrelevant case law. HEB dedicates much of its Motion to arguing that the "automatic stay [is] not intended to apply to a judicial proceeding to enjoin unlawful conduct by the debtor." HEB's Motion, ¶ 21.  In doing so, HEB neglects to disclose to the Court that ***there is not and never has been an injunction in the Houston case***.[4]  Unlike the Sixth Circuit case cited by HEB—wherein the debtor was already subject to a judgment of trademark infringement and a show cause order for continued violations of an injunction prohibiting him from using the trademark—Meagher has not been adjudicated to have committed any "unlawful conduct." *Id.* (citing *Dominic's Restaurant of Daytona, Inc. v. Mantia*, 683 F.3d 757 (6th Cir. 2012).  On the contrary, Meagher's own discovery has produced ample evidence (a) of his long-established trademark rights; and (b) that HEB's claimed "likelihood of confusion" between his mark and HEB's Mi Tienda mark is pure fiction. *See* Ex. A-2 (Likelihood of Confusion Survey Report).[5]

13.  HEB then argues the relevant factors "weigh heavily in favor" of allowing HEB to "continue prosecuting pre-petition claims for injunctive relief." Motion, ¶ 22.  HEB again fails to mention to the Court that, in the **29 months** the Houston case has been pending, it has never once sought, much less obtained, a temporary restraining order or preliminary injunction against

---

[4] *See generally*, Cause No. 4:17-cv-02810, *HEB Grocery Co., LP v. Meagher*, et al., in the U.S. District Court, Southern District of Texas.

[5] On January 16, 2019, the USPTO's examining attorney, in considering Mr. Meagher's re-registration of his MyStore trademark, found no likelihood of confusion between Meagher's MyStore and HEB's Mi Tienda mark and duly approved the MyStore mark for publication in the Official Gazette.

any of the defendants. If Meagher's 10 years plus 29 months of using the MyStore trademark is so heinous and "potentially" harmful, where was the urgency to stop his use of it?

14. HEB then touts the fact that it is "not seeking economic damages." *Id.*, ¶ 24. Unless HEB is willing to permanently waive and release Mr. Meagher and the other defendants of any damages in the Houston case, this fact means little. Moreover, given that Mr. Meagher would have to deplete his own estate to defend the Houston case while this bankruptcy is pending, it cannot be said that lifting the stay would be harmless simply because HEB has not pled, for the moment, any economic damages. *See* Ex. A, ¶¶ 8-9.

15. Lastly, HEB alleges, without proof, the impact of lifting the stay on Meagher's estate is "negligible" compared to the "***potential*** harm to HEB of allowing the Debtor's trademark infringement to continue unimpeded." Motion, ¶ 27 (emphasis added). There has been no finding (not even a preliminary one) by *any* court that Mr. Meagher is infringing upon HEB's or anybody else's trademarks.

16. With all due respect to HEB's "potential" troubles, the harm Mr. Meagher would suffer if the stay were lifted is far less speculative. *See* Ex. A, ¶¶ 8-9. If he is not able to focus on reorganization free from HEB's litigation interference, he will not be able to market and sell his most valuable asset as part of reorganization. *Id.* at ¶ 9. He will also be obliged to severely deplete his bankruptcy estate in order to pay for his litigation defense in Houston. *Id.*

C. **Governing standards.**

17. The automatic stay is meant to safeguard a debtor's assets for equitable administration so as to head off creditors' race to the courthouse. *In re Cowin*, 864 F.3d 344, 352 (5th Cir. 2017). While this Court enjoys flexibility in determining these motions, it may not modify the stay unless HEB proves that the "specific exigencies" of this case constitute good

cause under 11 U.S.C. § 362(d)(1). *In re Chesnut*, 422 F.3d 298, 303-04 (5th Cir. 2005). In examining these exigencies, the Court "balance[s] the hardships of the parties [and] the goals of the Bankruptcy Code." *Mooney v. Gill*, 310 B.R. 543, 546 (N.D.Tex. 2002). Despite often referencing the popular *Curtis*[6] and *Johnson*[7] factors, in the Northern District of Texas, courts make their own decisions as to which factors are relevant in determining lift stay motions. *See, e.g., In re Choice ATM Enterprises, Inc.*, No. 14-44982-DML, 2015 WL 1014617 at *5 (Bankr.N.D.Tex. March 4, 2015) (relying on *In re Mirant Corp.*, 440 F.3d 238, 253 (5th Cir. 2006)).

### D. Relevant factors.

*Factor 1: The MyStore asset is a necessary part of Debtor's reorganization and lifting the stay would jeopardize the reorganization.*

18. The most important factor in determining this Motion is the fact that the MyStore trademark is a critical and necessary component of Debtor's anticipated reorganization plan. Meagher anticipates a sale of his MyStore trademark could recover up to $800,000 for the estate. *See* Response at ¶ 7, *supra*; *see also* Ex. A-1, 67:13-25 As such, it is by far his most valuable asset. This is a realistic outcome too since there is no injunction in place or lien on the trademark to prevent Meagher from marketing it. If there is a buyer in the market who wishes to pay the trademark (even at a discount given HEB's litigious posture), it promises to be the centerpiece of this reorganization.

19. This accords with *Curtis* factors 2, 7, and 12 and is a primary factor considered by this Court in past proceedings. *See In re Choice ATM Enterprises, Inc.*, 2015 WL 1014617 at *6; *see also Curtis*, 40 B.R. at 804-806 (Bankr.D.Utah 1984) (factors 2, 7, and 12). One of the

---

[6] *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984).

[7] *In re Johnson*, 115 B.R. 634 (Bankr.D.Minn. 1989).

primary purposes of Chapter 11 is the "maximizing [of] property available to satisfy creditors." *In re Choice ATM Enterprises, Inc.*, 2015 WL 1014617 at *6 (citing *Bank of Am. N.A. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999)). The automatic stay "works in concert with chapter 11 to achieve these goals." *Id.* Where an asset is "critical" to a Debtor's plan of reorganization, the "importance of retaining the [asset] within the [bankruptcy case] is magnified." *Id.*

20. Meagher is considering the marketing of MyStore through a section 363 asset sale and/or a Chapter 11 plan confirmation so the sale proceeds may be distributed to his creditors. Ex. A, ¶ 9. If the automatic stay is lifted and HEB can resume its war of attrition against Mr. Meagher, it would interfere with his ability to market this asset, thereby thwarting the goal of this Chapter 11. *See id.*; *see also In re Chesnut*, 422 F.3d at 306 (the automatic stay typically prevents a single creditor from seizing debtor's "most significant assets" and thereby "hinder[ing] the ability of other creditors to obtain equitable distributions of the estate's resources"). If HEB is confident in the merits of its claims against Meagher, it should have no qualms with pursuing them in an orderly manner within and alongside this bankruptcy so that Meagher is not denied the opportunity to reorganize his financial situation and other creditors are not denied the opportunity to have their interests heard in this case.

<u>Factor 2</u>: *Judicial economy disfavors removal of the stay.*

21. The Southern District case is not close to trial, a factor that weighs in favor of denying the Motion. *See In re Choice ATM Enterprises, Inc.*, 2015 WL 1014617 at *5. Discovery is incomplete and, more importantly, there is *still* no trial date scheduled. HEB has yet to produce its own "likelihood of confusion" survey (a necessary step if it is to ever prove its claims) and Meagher anticipates taking at least one more deposition. The fact that the Southern

District case has not progressed any farther despite having been filed 29 months ago stands in stark contrast to the Bankruptcy Code's "highly efficient claims estimation process." *In re Choice ATM Enterprises, Inc.*, 2015 WL 1014617 at *5. Assuming, *arguendo*, the Southern District case *were* on the eve of trial, this Court nevertheless holds that that where a pre-petition case's discovery file can be used in the bankruptcy court "without redundancy," there is no risk of judicial inefficiency. *Id.* If the Southern District case were in the middle of trial when Meagher filed his bankruptcy petition, this factor may weigh differently, but it was not.

> *Factor 3*: An adverse ruling on the Motion would disproportionately harm the Debtor.

23. This Court should also carefully consider the "balance of hurt" a stay modification would have on the parties. *Mooney*, 310 B.R. at 546 (the Court "must balance the hardships" of a lift stay); *see also Curtis*, 40 B.R. at 806 ("[f]inancial hardship to the movants must, of course, be balanced against financial hardship to the debtors").

24. Todd Meagher made approximately $8,000 of gross income in the 60 days preceding the filing of his Chapter 11 petition. *See* Income Statement [Dkt. No. 30]. He currently owes his Houston litigation counsel, Thompson Coe, Cousins, & Irons, LLP ("Thompson Coe") the sum of $119,056.90. *See* Schedule F, ¶ 4.8 [Dkt. No. 23]; *see also* Ex. A, ¶ 8. Given the tenor and pace of the Houston litigation, Thompson Coe has already told Mr. Meagher in no uncertain terms that he will need to come up with a $50,000 payment on his account if Thompson Coe is to represent him any further in the Southern District (and the inevitable Fifth Circuit appeals). *Id.* The Debtor—indeed, *all* the defendants—live just a few minutes away from this Court in Keller and Thompson Coe's largest office is in Dallas. Even if he could pay Thompson Coe to continue defending him in Houston, HEB's litigation would significantly interfere with Mr. Meagher's ability to focus completely on this reorganization

because of the constant travel to and from Houston whilst another case is proceeding in Fort Worth.

25. On the other hand, Fort Worth promises a far more cost-efficient, streamlined forum for a contested matter or adversary proceeding. Given HEB's vast resources and the fact that it has not argued (much less produced any evidence) that litigating in this forum would be unduly burdensome to HEB, the "balance of harm" analysis weighs heavily in favor of keeping everything in Fort Worth. *See In re Choice ATM Enterprises*, 2015 WL 1014617 at *5 ("judicial economy" concerns weighed toward litigating claims in the bankruptcy court because discovery could be re-used and there was no undue burden on movant).

<i><u>Factor 4</u>: The Southern District of Texas is not a specialized forum with expertise in trademark litigation.</i>

26. Finally, the HEB litigation does not involve technical or niche subject matter, nor is the alternative forum a "specialized tribunal" particularly empowered to adjudicate it. *See Curtis*, 40 B.R. at 800; *Johnson*, 115 B.R. at 636. Were HEB's feud were still in the USPTO or the TTAB, maybe this factor would weigh in HEB's favor. *See, e.g., Matter of Gary Aircraft Corp.*, 698 F.2d 775, 784 (5th Cir. 1983) (Board of Contract Appeals was the appropriate, specialized forum for liquidating a government contracting dispute). The District Court for the Southern District of Texas, however, is a court of general jurisdiction, not an intellectual property court. If HEB wishes to bring an adversary proceeding against Mr. Meagher, it is free to do so in the Northern District of Texas.

**E.      HEB is adequately protected by the pendency of its own lawsuit.**

27. Debtor concludes by noting that HEB has not alleged a lack of adequate protection to justify relief from the stay. HEB has also not asserted an ownership right or lien of any kind over the MyStore trademarks. Rather, it simply alleges that Meagher's use of his own

trademark(s) is actionable because it interferes with HEB's use of its Mi Tienda marks. These claims (such as they are) would survive the denial of HEB's Motion. Even a sale of the MyStore trademark would not infringe upon HEB's rights to object to the sale or file a proof of claim in this case. Simply stated, no need for adequate protection exists. HEB's true motives could not be clearer: it wants to force a cash-strapped Debtor to fight on two fronts, including on HEB's home turf in Houston while he is simultaneously reorganizing his business and personal finances in Fort Worth.

## PRAYER

To conclude, the estate does not benefit from a lift of stay at this time and HEB failed to satisfy its *prima facie* burden to justify such relief. Lifting the stay so that HEB can force Meagher to defend litigation in Houston could jeopardize the marketability of his most valuable asset and hinder this reorganization. Debtor therefore respectfully requests that the Court deny this Motion in its entirety. In the event this Court believes Movant has presented a *prima facie* claim for relief, Debtor respectfully asks the Court to set this matter for final hearing and, thereafter, deny the Motion and grant Debtor such other and further relief to which he is entitled at law or in equity.

Dated: February 26, 2020	Respectfully submitted,

	*/s/Mark A. Castillo*
	Stephanie D. Curtis
	Texas State Bar No. 05286800
	Mark A. Castillo
	Texas State Bar No. 24027795
	Robert C. Rowe
	Texas State Bar No. 24086253
	CURTIS | CASTILLO PC
	901 Main Street, Suite 6515
	Dallas, Texas 75202
	Telephone: 214.752.2222
	Facsimile: 214.752.0709
	Email: scurtis@curtislaw.net
	        mcastillo@curtislaw.net
	        rrowe@curtislaw.net

	**COUNSEL FOR
	DEBTOR IN POSSESSION**

### CERTIFICATE OF SERVICE

This is to certify that, on February 26, 2020, a true and correct copy of the foregoing document, was served via the Court's CM/ECF service system to all parties and/or counsel consenting to such service.

	*/s/Robert C. Rowe*
	Robert C. Rowe