Exhibit A-2

RHONDA HARPER LLC – CASE 4:19-CV-00655-O

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

GHER Solutions, LLC,

        Plaintiff,

v.

HEB GROCERY COMPANY, LP,

        Defendant.

Case No. 4:19-CV-00655-O

CONSUMER LIKELIHOOD OF CONFUSION SURVEY REPORT

BY:

RHONDA HARPER MBA

RHONDA HARPER, LLC

CONFIDENTIAL

RHONDA HARPER LLC – CASE 8:17-cv-00362

# Table of Contents

BACKGROUND ...................................................................................................................... 3

OBJECTIVE ........................................................................................................................... 4

MATERIALS RECEIVED AND CONSIDERED ..................................................................... 4

REMUNERATION RECEIVED .............................................................................................. 5

PRINCIPAL FINDINGS AND OPINIONS .............................................................................. 5

    KEY FINDINGS ........................................................................................................................ 6
    SUMMARY OF OPINIONS ......................................................................................................... 6
    METHOD, DESIGN PRINCIPLES AND STANDARDS ..................................................................... 6
    FACTOR #1: THE UNIVERSE (OR POPULATION) ....................................................................... 8
    FACTOR #2: THE SAMPLING PLAN .......................................................................................... 9
    FACTOR #3: QUESTIONNAIRES ................................................................................................ 9
        *Screener Questionnaire (Respondent Qualification Questions)* ........................................ 12
        *Characteristics of Survey Completers* .............................................................................. 13
        *Main Questionnaire* ......................................................................................................... 15
        *Stimuli Used* .................................................................................................................... 15
    FACTOR #4: INTERVIEWING PROCEDURES .............................................................................. 20
    FACTORS #5 & #6: ENSURING ACCURACY IN DATA RECORDING, ANALYSIS, AND REPORTING ... 21
        *Data Cleaning* ................................................................................................................. 21
    FACTOR #7: ENSURING OBJECTIVITY ..................................................................................... 22

REPORT OF FINDINGS ........................................................................................................ 22

    TEST: FINDINGS ..................................................................................................................... 22
    CONTROL: FINDINGS .............................................................................................................. 24

CONCLUSION ........................................................................................................................ 25

CERTIFICATION ................................................................................................................... 26

APPENDIX A .......................................................................................................................... 28

    EXHIBIT 1: RHONDA HARPER RESUME .................................................................................. 29
    EXHIBIT 2: RHONDA HARPER PROFESSIONAL EXPERIENCE OVERVIEW .................................... 31
    EXHIBIT 3: RHONDA HARPER RULE 26 TESTIMONY EXPERIENCE .............................................. 32

APPENDIX B .......................................................................................................................... 33

    EXHIBIT 1: QUALTRICS PLATFORM OVERVIEW ....................................................................... 34
    EXHIBIT 2: DOMAINTOOLS DOMAIN REPORT – MYSTORE.COM ............................................. 37

APPENDIX C .......................................................................................................................... 393

    EXHIBIT 1: SURVEY FLOW ..................................................................................................... 394
    EXHIBIT 2: SURVEY SCREENER & QUESTIONNAIRE .................................................................. 403
    EXHIBIT 2: SURVEY SCREEN SHOTS ....................................................................................... 421
    EXHIBIT 3: SURVEY TABLES ................................................................................................... 434
    EXHIBIT 4: RAW FILE ATTACHED ........................................................................................... 489

CONFIDENTIAL

RHONDA HARPER LLC – CASE 8:17-cv-00362

# BACKGROUND[1]

1) GHER SOLUTIONS, LLC ("Plaintiff") contacted Rhonda Harper[2], the author of this report, on behalf of the Plaintiff, requesting that she design and conduct a likelihood of confusion consumer survey in the matter of GHER SOLUTIONS, LLC v. HEB GROCERY COMPANY, Defendant.

2) Plaintiff GHER SOLUTIONS, LLC operates several website portals including the on-line marketplace www.mystore.network, previously located at www.mystore.com,[3] and seeks protection against a threat of trademark litigation by HEB GROCERY COMPANY over the use of the combined word mark MYSTORE to identify its software, mobile applications, websites, and its service of advertising and information distribution services, namely: providing classified advertising space via a global computer network; promoting the goods and services over the Internet; providing online computer databases and online searchable databases featuring classified listings and want ads; or the provision of an online marketplace for buyers and sellers of goods and services.

3) Defendant HEB GROCERY COMPANY operates a brick and mortar grocery retailer with two stores located in Houston, TX which operate under the MI TIENDA mark. MI TIENDA when translated to English can be either "MY STORE" or "MY SHOP."[4]

---

[1] Complaint for Declaratory Judgment and Cancellation.

[2] Appendix A provides a copy of Rhonda Harper's Resume and Expert Testimony outlining qualifications in this matter.

[3] Domain Tools Domain Report MyStore.com, May 1, 2019.

[4] On October 24, 2005, the United States Patent and Trademark Office identified the English translation of "Mi TIENDA" to be "MY STORE" and on May 11, 2019 the United States Patent and Trademark Office identified the English translation of "Mi TIENDA" to be "MY SHOP." See Office Actions.

CONFIDENTIAL

RHONDA HARPER LLC – CASE 8:17-cv-00362

# Objective

4)    Acting on behalf of Plaintiff GHER SOLUTIONS, LLC, I was asked to design and conduct a likelihood of confusion (LOC) survey to determine whether, and if so to what extent, consumers are confused as to the source of Plaintiff GHER SOLUTIONS, LLC MYSTORE mark and website portal www.mystore.network and the reasons why. This report describes the design and findings of said survey.

# Materials Received and Considered

5)    To provide pertinent background, in addition to the footnotes contained herein, the following materials were reviewed and considered:

- Complaint for Declaratory Judgment and Cancellation, Case 4:19-cv-00655, GHER Solutions, LLC v. HEB GROCERY COMPANY, LP.
- First Amended Complaint for Trademark Infringement, Unfair Competition, Dilution, and Unjust Enrichment, Case 4:17-cv-02810, HEB GROCERY COMPANY, LP v. TODD MEAGHER, IRENE ALEXIS MEAGHER, and MYSTORE, INC.
- October 24, 2005 and May 11, 2019 Office Actions for MI TIENDA #88373475, United States Patent and Trademark Office
- Demand Letter by PirkeyBarber, September 21, 2017
- Petition for Cancellation, ESTTA Tracking Number 962392
- Domain Tools Domain Report – MyStore.com, May 1, 2019
- Domain Tools Domain Report – MiTienda.com, May 1, 2019

CONFIDENTIAL

RHONDA HARPER LLC – CASE 8:17-cv-00362

- Mike Lindell Products, LLC's Motion to Intervene, Case 4:19-cv-00655, GHER Solutions, LLC v. HEB GROCERY COMPANY, LP.

## REMUNERATION RECEIVED

6) Rhonda Harper is receiving $25,000 from Plaintiff GHER SOLUTIONS, LLC for designing, supervising analyzing and reporting the survey described herein. Harper invoices at $600 per hour, plus out-of-pocket expenses, from this point onward for all other activities.

## PRINCIPAL FINDINGS AND OPINIONS

7) The objective was to survey a statistical sample of current and potential purchasers of Plaintiff GHER SOLUTIONS, LLC's services within the Defendant HEB GROCERY COMPANY MI TIENDA retail grocery stores trade areas to determine if there exists confusion, and if so to what extent, as to the source of the MYSTORE mark.

8) In all, a total of 3,033 individuals responded ("Responders") to complete the survey. Of these, a total of 651 individuals qualified and completed ("Completers") the survey for a completion rate of twenty-one percent (21.46%).

9) The findings are based on the 651 Completers who qualified as members of the defined universe (see section entitled "Factor 1: The Universe", infra) and who remained after excluding respondents for various reasons indicated in the section entitled "Factors #5 and #6: Data Recording, Reporting and Analysis."

RHONDA HARPER LLC – CASE 8:17-cv-00362

## *Key Findings*

10)   Overall, less than one-percent (-0.03%) of Completers believe Defendant HEB GROCERY

COMPANY'S MI TIENDA website and stores are put out by the same company as, or an

affiliated or associated to, Plaintiff GHER SOLUTIONS, LLC's WWW.MYSTORE.NETWORK

website portal screenshot.

|  | Test Q5.4 | | Control Q4.4 | | |
|---|---|---|---|---|---|
| Response | n | % | n | % | Net % |
| Same Company | 11 | 3.37 | 10 | 3.08 | 0.29 |
| Affiliated / Associated | 23 | 7.06 | 24 | 7.38 | (.32) |
| Total | 34 | 10.43 | 34 | 10.46 | (0.03) |

## *Summary of Opinions*

11)   Based upon the obtained findings, in my opinion there is no likelihood of confusion among

consumers as to the source of the Plaintiff GHER SOLUTIONS, LLC's MYSTORE mark and

www.mystore.network website portal.

## *Method[5], Design Principles and Standards*

12)   The study was designed and conducted in strict accordance with the seven-factor framework cited

in the Federal Judicial Center's ("FJC") Manual for Complex Litigation, Fourth (Section 11.493)

and with the greater amplification of this framework provided in the "Reference Guide on Survey

---

[5] The Methods section provides the details of the study design and implementation that led to the findings obtained. Readers wishing to skip this information should proceed to the next major section of this report entitled Report of Findings.

RHONDA HARPER LLC – CASE 8:17-cv-00362

Research" appearing in the FJC's 2012 Reference Manual on Scientific Research. Also considered in the design of this investigation were the implications of the Supreme Court's opinion in Daubert v. Merrell Dow.[6]

13) The seven factors from the Manual for Complex Litigation are quoted verbatim below. The order in which they are cited departs from the original to more closely track the sequence of activities that typically occurs during the research process. This departure from the order in which these factors are described has no effect on the design, conduct, findings, accuracy, or reliability of this report.

- The population was properly chosen and defined;

- The sample chosen was representative of that population;

- The questions asked were clear and not leading;

- The survey was conducted by qualified people following proper interviewing procedures;

- The data gathered were accurately reported;

- The data were analyzed in accordance with accepted statistical principles; and,

- The process was conducted so as to ensure objectivity.

14) Rhonda Harper's qualifications as a consumer researcher (an element of Factor #4) are set forth in Appendix A. Among these qualifications, Rhonda Harper led the Consumer Research and Insights departments for Walmart / Sam's Club, Vanity Fair Corporation, and RTM&J, a strategic marketing consultancy. She has been responsible for, or herself conducted, hundreds – if not

---

[6] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

CONFIDENTIAL

RHONDA HARPER LLC – CASE 8:17-cv-00362

thousands – of qualitative and quantitative studies in her thirty-year professional career. For decades, Rhonda Harper has been a member, and serving as keynote or breakout speakers, of leading national research-based trade associations and companies such as the Marketing Research Association, Institute for International Research, American Marketing Association, and Nielsen.

15)    As will be seen from this detailed report, the importance of objectivity (Factor #7) was observed throughout the design, implementation and interpretation of all aspects of the investigation.

## *Factor #1: The Universe (or Population)*

16)    To be useful and, in the case of litigation surveys, to be considered probative the study needs to focus on "the appropriate respondents," namely, those whose states of mind are relevant. For present purposes, the universe was defined as current and potential purchasers of Plaintiff GHER SOLUTIONS LLC's services,[7] specifically: Individuals (1) ages 18+; (2) residing in Defendant HEB GROCERY COMPANY's trading areas[8]; and, (3) who in the past twelve months have sold, or in the next twelve months would consider selling items or services using an online marketplace.

17)    Defendant HEB GROCERY COMPANY's trade areas were defined as zip codes within a six-mile radius surrounding Defendant HEB GROCERY COMPANY's two MI TIENDA Houston stores and then supplemented with responders in the Houston MSA. Defendant HEB GROCERY COMPANY states that its MI TIENDA products are sold at its MI TIENDA stores in Houston

---

[7] Sterling Drug, Inc., v. Bayer AG 14 F.3d 733, 29 USPQ2d 1321, 1326 (2d Cir. 1994)

[8] The survey first penetrated a six-mile radius surrounding the two Mi Tienda Houston stores and then was supplemented with participants in the Houston MSA.

CONFIDENTIAL

RHONDA HARPER LLC – CASE 8:17-cv-00362

and at HEB stores throughout Texas. Further, that the products are advertised and promoted on its websites. Finally, that it promotes products and services through a variety of media, including television media and circulars distributed in Houston.[9]

## Factor #2: The Sampling Plan

18) The proper universe for a consumer LOC survey consists of current purchasers[10] and potential purchasers, of the alleged infringers goods and services,[11] in this case the Plaintiff GHER SOLUTIONS, LLC.

19) Respondents were drawn from the Qualtrics Panel.[12] Potential respondents were sent an email invitation for them to participate in a survey and offered a small incentive deposited into the panelist's account. Security systems were in place to ensure respondents only took the survey once and confirm that there were no duplicates.

## Factor #3: Questionnaires

20) Questionnaires generally have two components, a Screener portion and a Main portion. The principal objectives of the Screener portion are to (a) ensure that interviews are conducted only with individuals who satisfy the universe definition, and (b) identify and eliminate from further consideration atypical members of the universe, that is, individuals who might be unusually

---

[9] Plaintiff HEB Grocery Company LP's Motion for Summary Judgment, Case 4:17-cv-02810, HEB GROCERY COMPANY, LP v. TODD MEAGHER, IRENE ALEXIS MEAGHER and MYSTORE, INC.

[10] William G. Barber, The Universe in Diamond & Swann, Trademark and Deceptive Advertising Surveys supra note 19, at 27, 36.

[11] William G. Barber, The Universe in Diamond & Swann, Trademark and Deceptive Advertising Surveys supra note 19, at 27, 36.

[12] See Appendix B.

RHONDA HARPER LLC – CASE 8:17-cv-00362

sensitive to marketing, advertising, and survey research.[13]

21)    The purpose of the Main questionnaire is to ask the questions of substantive interest of those who remain.

22)    In no part of the survey were respondents able to go "back" to previous questions.

23)    This survey deployed the frequently used Squirt variant,[14] a two-room study methodology[15]: (i) in one room, a respondent sees the allegedly infringed brand stimulus – the senior mark; (ii) then sees in a second room the alleged infringers' brand stimulus – the junior mark; (iii) is asked whether the two come from the same company, associated or affiliated companies, or two different companies.[16]

24)    The study employed an experimental design using a Test vs. Control format to determine the impact of a variable of interest above and beyond the baseline level of impact of extraneous variables in the marketplace.[17]

25)    In this study, respondents were randomly assigned either to either the Test group or the Control group. In the Test group, respondents were exposed to Defendant HEB GROCERY COMPANY's www.mitiendatx.com website screenshot along with interior and exterior images of its retail grocery stores and Plaintiff GHER SOLUTIONS, LLC's www.mystore.network

---

[13] Specifically, the relevant universe were screened to ensure responders: (1) She or he, nor anyone her household works for an advertising agency or a market research company; (2) Agrees to answer the questions in this survey by herself or himself without the help or assistance of anyone else or any other source; (3) Are wearing contacts or glasses if needed to read.
[14] See Storck USA v. Farley Candy Co., 797 F. Supp. 1399, 1408 (N.D. Ill. 1992); Gross v. Bare Essentials Beauty, Inc., 2008 WL 4937561, at *9 (S.D.N.Y. 2008).
[15] Stork USA v. Farley Candy Co., 797 F. Supp. 1399, 1408 (N.D. Ill. 1992); 6 McCarthy on Trademarks and Unfair Competition, 32:177, 4th Edition.
[16] McCarthy, supra note 6, § 32:177; see Jacoby, in Trademark and Deceptive Advertising Surveys, supra note 5, at 274 with respect to the need for "balance."
[17] "By adding one or more appropriate Control groups, the survey expert can Test directly the influence of the stimulus." See Diamond, S. (2011). "Reference Guide On Survey Research," in Reference Manual on Scientific Evidence. Federal Judicial Center/National Academy of Sciences, p. 398.

CONFIDENTIAL

RHONDA HARPER LLC – CASE 8:17-cv-00362

website portal screenshot. In the Control group, responders were exposed to Defendant HEB

GROCERY COMPANY's www.mitiendatx.com website screenshot along with interior and

exterior images of its retail grocery stores and Plaintiff GHER SOLUTIONS, LLC's

www.mystore.network website portal screenshot without the alleged infringing MYSTORE

marks, which were replaced by fictitious VIMSBIZ marks.

26)   A measurement of likelihood of confusion was taken after consumers were exposed to their

assigned stimuli to determine the level of confusion, if any, which resulted among Completers in

each cell. To the extent that there is a statistically significant difference between the proportion of

consumers who indicate the stimuli emanate from the same source, or an associated or affiliated

source, in the Test cell as compared to the Control cell,[18] it can be concluded that a likelihood of

confusion exists in the market. Conversely, if no significant difference between the Test cell and

the Control cell exists, it is concluded that there is no likelihood of confusion among consumers.[19]

27)   The Control cell measures the baseline level of consumer confusion within the marketplace,

sometimes referred to by marketing researchers as "noise."

28)   Copies of the Main and Screener questionnaires used in the present investigation are provided in

Appendix D. In keeping with recommended practice to counterbalance for potential "order

---

[18] "The focus on the response level in a control group design is not on the absolute response level, but on the difference between the response level of the experimental group and that of the control group." See Diamond, S. (2011). "Reference Guide On Survey Research," in *Reference Manual on Scientific Evidence*. Federal Judicial Center/National Academy of Sciences, p. 399. See also See Shari S. Diamond, Using Psychology to Control Law: From Deceptive Advertising to Criminal Sentencing, 13 Law & Hum. Behav. 239, 244–46 (1989); Jacob Jacoby & Constance Small, Applied Marketing: The FDA Approach to Defining Misleading Advertising, 39 J. Marketing 65, 68 (1975).
[19] Statistical testing was calculated at the 95 percent confidence level. "Traditionally, scientists adopt the 95% level of confidence, which means that if 100 samples of the same size were drawn, the confidence interval expected for at least 95 of the samples would be expected to include the true population value." See Diamond, S. (2011). "Reference Guide On Survey Research," in *Reference Manual on Scientific Evidence*. Federal Judicial Center/National Academy of Sciences, p. 381.

RHONDA HARPER LLC – CASE 8:17-cv-00362

effects," as appropriate, the response options provided for closed-ended questions were

randomized. Appendix D also contains the questionnaire used as the basis for programming the

study and indicates all the randomization instructions that were applied.

## SCREENER QUESTIONNAIRE (RESPONDENT QUALIFICATION QUESTIONS)

29)    The Screener portion of the questionnaire began by providing the following instruction:

> *Welcome.*
>
> *We are conducting a brief opinion survey for Harper Research, an independent research firm headquartered in Dallas, TX.*
>
>          This was followed by:
>
> *Question 2 (Q1.2) to ensure that neither the participant nor anyone in his or her immediate household works for an advertising agency or a market research firm; public relations firm, or market research company;*
>
> *Q1.3 to ensure the participant is not now working for, nor in the past six months worked for, a grocery store;*
>
> *Q1.4 to ensure the participant would answer the questions by themselves;*
>
> *Q1.5 to ensure that the participant, in the past 12 months had, or in the coming 12 months would consider, selling products or services using an online marketplace;*
>
> *Q1.6 to ensure the participant was wearing glasses or contacts, if necessary, to read;*
>
> *Q1.7-8 to verify the participant could see and read the screen; and,*
>
> *Q1.9 to ensure the participant resides in the targeted geography.*

30)    This section was followed by the following instruction to the Main portion:

> *Thank you. You qualify for this study.*
>
> *Please understand that we are only interested in your opinions or beliefs. If you don't have an opinion or belief, or don't know the answer, that is okay. Simply say so.*
>
> *PLEASE DO NOT GUESS.*

RHONDA HARPER LLC – CASE 8:17-cv-00362

31)    Finally, survey Completers were confirmed as to age and income to ensure general population coverage (see Characteristics, infra).

### *CHARACTERISTICS OF SURVEY COMPLETERS*

32)    The Survey Completer characteristics did not show any bias and are representative of the overall Universe of individuals who have, or would consider, selling items in an online marketplace.[20] Importantly, there were no significant differences to the overall findings when segmenting among those who are fluent in Spanish, zip code residence, or gender. In fact, all sub-findings resulted in an overall likelihood of confusion rate well within the margin of error.  See below:

*Q1.9 - In what zip code do you live?*

- Number of Completers within the six-mile radius of the two MI TIENDA stores: 64
- Number of Completers within the Houston MSA: 600

*Q6.1 - Are you male or female?*

| Answer | % | Count |
|---|---|---|
| Male | 33.03% | 215 |
| Female | 66.97% | 436 |
| Total | 100% | 651 |

*Q6.2 - What is your age?*

---

[20] "Redefining Entrepreneurship: Etsy Sellers' Economic Impact," Etsy, 2012, https://blog.etsy.com/news/files/2013/11/Etsy_Redefining-Entrepreneurship_November-2013.pdf; https://www.statista.com/statistics/447960/us-etsy-seller-demographics/; http://www.annualreports.com/HostedData/AnnualReports/PDF/NASDAQ_ETSY_2018.pdf

CONFIDENTIAL

RHONDA HARPER LLC – CASE 8:17-cv-00362

| Answer | % | Count |
|---|---|---|
| Under age 18 | 0.00% | 0 |
| 18 - 24 | 13.52% | 88 |
| 25 - 34 | 29.34% | 191 |
| 35 -44 | 27.34% | 178 |
| 45 - 54 | 15.21% | 99 |
| 55 or Over | 14.59% | 95 |
| Total | 100% | 651 |

*Q6.3 - What is your household income?*

| Answer | % | Count |
|---|---|---|
| $25,001 - $50,000 | 23.66% | 154 |
| $100,001+ | 23.04% | 150 |
| $50,001 - $75,000 | 21.04% | 137 |
| $75,001 - $100,000 | 15.51% | 101 |
| <$25,000 | 11.67% | 76 |
| Prefer not to answer | 5.07% | 33 |
| Total | 100% | 651 |

*Q6.4 - How fluent are you in English and Spanish?*

| Question | Not At All Fluent | | Somewhat Fluent | | Fluent | | Very Fluent | | Total |
|---|---|---|---|---|---|---|---|---|---|
| English | 0.00% | 0 | 0.92% | 6 | 5.38% | 35 | 93.69% | 609 | 650 |
| Spanish | 58.36% | 377 | 28.48% | 184 | 5.73% | 37 | 7.43% | 48 | 646 |

CONFIDENTIAL

RHONDA HARPER LLC – CASE 8:17-cv-00362

## MAIN QUESTIONNAIRE

33)   To avoid redundancy, the instructions and substantive questions comprising the Main

questionnaire are discussed in the section entitled "Report of Findings" and Appendix C "infra."

## STIMULI USED

34)   The Main Questionnaire focuses on Responder perceptions of the source of Plaintiff HEB

GROCERY COMPANY's MYSTORE mark and Defendant HEB GROCERY COMPANY's MI

TIENDA mark as shown in marketplace context.

35)   A screenshot of Plaintiff GHER SOLUTIONS, LLC's actual www.mystore.network website

portal was used as test stimuli to show it how consumers view the mark in the marketplace. The

word mark is in the URL and header tab while the design mark is on the website page itself:[21]

[left blank]

---

[21]  A review of DomainTools (see Appendix B, Exhibit 2) shows that the website portal in market for more than a decade, while updated, has been continuously used as a marketplace for small businesses and individuals and been consistent in coloration, tone, and style.

CONFIDENTIAL

RHONDA HARPER LLC – CASE 8:17-cv-00362







CONFIDENTIAL

RHONDA HARPER LLC – CASE 8:17-cv-00362

36) Consumers see the MI TIENDA mark online in the website url, header tab, and on the website itself, driving by the store on signs, and shopping inside the store on signs and products. Therefore, Defendant HEB GROCERY COMPANY's www.mitiendatx.com website screenshot along with interior and exterior retail store images was used as Test stimuli. It includes two elements of the same stimuli DEFENDANT HEB GROCERY COMPANY used in its PR-Section 8 and 9 as a specimen filed on September 1, 2017 with the USPTO to secure the MI TIENDA mark.[22]

[Left Blank]

---

[22] http://tsdr.uspto.gov/documentviewer?caseId=sn78592481&docId=SPE20170902145111#docIndex=2&page=1

CONFIDENTIAL

RHONDA HARPER LLC – CASE 8:17-cv-00362







37)    A proper control should possess all of the characteristics of the alleged infringing mark, except

that which is being tested.[23]  Therefore, the Control stimuli uses the Plaintiff GHER SOLUTIONS

---

[23] Shari S. Diamond, Reference Guide on Survey Research, Reference Manual on Scientific Evidence (Second edition, 2000), 229, at 258.

RHONDA HARPER LLC – CASE 8:17-cv-00362

LLC's www.mystore.network website portal with the exception of the name, which was changed

to a fictitious VIMSBIZ in the header, url, and webpage:



RHONDA HARPER LLC – CASE 8:17-cv-00362

## *Factor #4: Interviewing Procedures*

38) To ensure the survey was conducted in a consistent and appropriate fashion, Interviewing was conducted via a computer-driven, online survey, no human interviewers were used. All bias from using human interviewers who might have failed to follow proper interviewing procedures was avoided.

39) The survey was fielded in one wave between October 30 – November 9, 2019. No collection time bias is noted.

40) Survey Research Design, Tabulation, Analysis, and Report were completed by:

Rhonda Harper LLC
6224 Penrose Avenue
Dallas, TX 75214
Rhonda Harper, MBA

41) Qualtrics provided the sample from its database and hosted the survey on its website Qualtrics.com. Founded in 2002 and serving 8,500 enterprises worldwide, including 75% of Fortune 100 corporations, Qualtrics employees upwards of 5,000 employees.[24]

42) The sample selection, questions, questionnaire design, survey methods and procedures employed in the survey was designed in accordance with the generally accepted standards and procedures in the field of surveys. The survey was also designed to meet the criteria for survey trustworthiness detailed in the Manual for Complex Litigation.[25]

---

[24] https://www.crunchbase.com/organization/qualtrics#section-overview

[25] For the proffered poll or survey, "...Relevant factors include whether: the population was properly chosen and defined; the sample chosen was representative of that population; the data gathered were accurately reported; and the data were analyzed in accordance with accepted statistical principles...In addition, in assessing the validity of a survey, the judge should take into account the following factors: whether the questions asked were clear and not leading; whether the survey was conducted by qualified persons following proper interview procedures; and whether the process was conducted so as to ensure objectivity..." See Federal Judicial Center, Manual for Complex Litigation, Fourth, Section 11.493, at 102-104 (2004).

CONFIDENTIAL

RHONDA HARPER LLC – CASE 8:17-cv-00362

43)     The survey conducted in this matter was administered under a double-blind protocol. Specifically, neither the respondents nor the staffs of Qualtrics and Research Now was informed as to the purpose or the sponsor of the surveys.

### Factors #5 & #6: Ensuring Accuracy in Data Recording, Analysis, and Reporting

#### DATA CLEANING[26]

44)     A total of 3,033 individuals began the Screener portion of Questionnaire, while 651 completed the Main Questionnaire, for a completion rate of twenty-one percent (21.46%). Cleaning resulted in a total of 2,382 respondents being removed for the following reasons:

| Question Number | Question Summary | Number Disqualified / Terminated |
|---|---|---|
| Q1.2 | Advertising / Marketing | 388 |
| Q1.3 | Worked in Grocery | 256 |
| Q1.4 | Complete Alone | 65 |
| Q1.4 | Selling Products/Services | 1,502 |
| Q1.6 | Glasses / Contacts | 134 |
| Q1.8 | Date on Penny | 3 |
| Misc. | Self-Term or Can't See Images | 34 |

45)     The findings reported below are based on the 651 Completers who remained after cleaning.

---

[26] Cleaning refers to purging the data set of unreliable or questionable data.

RHONDA HARPER LLC – CASE 8:17-cv-00362

### *Factor #7: Ensuring Objectivity*

46) As described herein, every aspect of the research process was designed to ensure objectivity in the collection and interpretation of the data. Overall, the study delivered a statistically relevant result exceeding a 95% confidence level with +/-4 percentage points margin of error.[27],[28] All efforts were made to present the survey questions in an objective, unbiased, and non-leading format. Respondents were presented with a "don't know, no opinion, other" answer option wherever appropriate throughout the survey to minimize guessing.

# REPORT OF FINDINGS

47) This section provides an overview of the key findings. Much greater detail can be found in Appendix D, which contains all research data contained in a zip file.

### *Test: Findings*

48) Responders first the Defendant's stimulus then the Plaintiff's stimulus. A pallet-cleansing decoy question was asked between the stimuli to distract the participant and represent a real-world scenario.

---

$$\dfrac{\dfrac{z^2 \times p(1-p)}{e^2}}{1+\left(\dfrac{z^2 \times p(1-p)}{e^2 N}\right)}$$

[27] Raosoft.com/samplesize.html

[28] "Traditionally, scientists adopt the 95% level of confidence, which means that if 100 samples of the same size were drawn, the confidence interval expected for at least 95 of the samples would be expected to include the true population value." See Diamond, S. (2011). "Reference Guide On Survey Research," in Reference Manual on Scientific Evidence. Federal Judicial Center/National Academy of Sciences, p. 381.

CONFIDENTIAL

RHONDA HARPER LLC – CASE 8:17-cv-00362

49)    The following question was then asked: Q5.3 "Now, remembering back to the "A Images" and comparing them to the "B Images," which of the following statements best represents your belief? If you don't know, please feel free to say so." Respondents could answer: (1) The "A Images" and "B Images" are from the same company; (2) The "A Images" and "B Images" are from two different companies; (3) The "A Images" and "B Images" are from two companies that are affiliated or associated, or; (4) None of the Above / Other / Don't Know.

50)    Of the 326 Completers, only three-percent (3.37%) believed the images came from the same company and seven percent (7.06%) believed that the two companies are affiliated or associated. Eighty-three percent (83.44%) believed the images were from two different companies while six-percent (6.13%) answered "None of the Above, Other, or Don't Know."

51)    If the participant's response was "same company," the following was asked: Q5.4 [open-end] "Why do you say that they are the same company? Please be as specific as possible." Of the eleven responders, five remarked on them looking similar while only one mentioned "same name."

52)    If the participant's response was "different companies," the following was asked: Q5.5 [open-end] "Why do you say that they are two different companies? Please be as specific as possible." Most pointed out the difference of one being a Mexican grocery store and the other being a video, marketing, or technology website for small businesses.

53)    If the participant's response was "affiliated or associated," the following was asked: Q4.6 [open-end] "Why do you say that the companies are affiliated or associated? Please be as specific as possible." Of the 23 responses, five were gibberish or guessing while only a couple mentioned that they had similar names or content.

CONFIDENTIAL

RHONDA HARPER LLC – CASE 8:17-cv-00362

## *Control: Findings*

54)    Responders first the Defendant's stimulus then the Control stimulus. A pallet-cleansing decoy question was asked between the stimuli to distract the participant and represent a real-world scenario.

55)    The following question was then asked: Q4.3 "Now, remembering back to the "A Images" and comparing them to the "B Images," which of the following statements best represents your belief? If you don't know, please feel free to say so." Respondents could answer: (1) The "A Images" and "B Images" are from the same company; (2) The "A Images" and "B Images" are from two different companies; (3) The "A Images" and "B Images" are from two companies that are affiliated or associated, or; (4) None of the Above / Other / Don't Know.

56)    Of the 326 Completers, only three-percent (3.08%) believed the images came from the same company and seven percent (7.38%) believed that the two companies are affiliated or associated. Eighty-four percent (84.00%) believed the images were from two different companies while six-percent (5.54%) answered "None of the Above, Other, or Don't Know."

57)    If the participant's response was "same company," the following was asked: Q4.4 [open-end] "Why do you say that they are the same company? Please be as specific as possible." Of the ten responses, five were either gibberish or stated as guessing. The five remaining mentioned selling online or similar or same approaches.

58)    If the participant's response was "different companies," the following was asked: Q4.5 [open-end] "Why do you say that they are two different companies? Please be as specific as possible." The primary reasons stated include the two companies are different types of businesses (e.g. "One is a Mexican store, the other was some type of webpage business." "One is a grocery store/food

RHONDA HARPER LLC – CASE 8:17-cv-00362

brand, and the other is a video service.") that have two completely different images and appearances (e.g. "One was colorful and party atmosphere and the other was professional and plain.") and two different names (e.g. "Two different names.").

59) If the participant's response was "affiliated or associated," the following was asked: Q4.6 [open-end] "Why do you say that the companies are affiliated or associated? Please be as specific as possible." Of the twenty-four responders, some said that they "looked similar," while others said that one could advertise on the other. Finally, one responder said, "[because] everything is associated."

## CONCLUSION

60) Courts have found a likelihood of confusion to be present, and therefore infringement of a trademark, if survey evidence shows that 10%[29] - 15% of relevant consumers are likely to be confused by a junior user's use of a mark or marks similar to a senior user's mark or marks (or vice-versa in reverse confusion cases).[30]

61) With less than one-percent (0.96%) of the relevant purchasers demonstrating a likelihood of confusion in the survey, clearly within the margin of error, I find that there no likelihood of confusion as to the source of the of the Plaintiff's goods and services based on the mark

---

[29] Discussing a 10% threshold: Jerre B. Swann, Sophistication and the Sciences, 97 TRADEMARK REP. 1309 (2007). See McCARTHY, note 5, § 32: 189. Further, the Eighth Circuit recently held that 'FNB South Dakota's own expert found that the percentage of consumers likely to be confused was thirteen percent, and we have held that even eleven percent confusion is not an insignificant percentage.' As a result, the district court did not clearly err in finding that the survey evidence demonstrates a likelihood of confusion." First Nat. Bank in Sioux Falls v. First Nat. Bank S. Dakota, 679 F.3d 763, 771 (8th Cir. 2012).

[30] Lanham Act, 15 USC 1114, 1125c. See also, Part I.C.; Exxon Corp. v. Texas Motor Exchange of Houston Inc., 628 F2d 500, 507 (5th Cir 1980); James Burrough Ltd. v. Sign of Beefeater, Inc., 540 F2d 266, 279, (7th Cir 1976).

RHONDA HARPER LLC – CASE 8:17-cv-00362

MYSTORE. More specifically, that consumers will not associate Plaintiff GHER SOLUTIONS

LLC's products and services as coming from Defendant HEB GROCERY COMPANY based on

the mark MYSTORE.

## CERTIFICATION

62) Should evidence come to my attention that I had not previously considered, I reserve the right to

amend my report. I am independent and have no current or prospective economic interest in the

results of my survey, analysis, and report. My compensation is in no way influenced by or

contingent upon the results or my opinions.

63) Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury that, based upon the

information available to me, to the best of my knowledge, the foregoing is true and correct.

Executed this 12th day of November, in Dallas, Texas.

_____

Rhonda Harper MBA, Rhonda Harper LLC

CONFIDENTIAL