```
                 IN THE UNITED STATES BANKRUPTCY COURT
                  FOR THE NORTHERN DISTRICT OF TEXAS
                         FORT WORTH DIVISION

In Re:                          )    Case No. 20-40208-mxm-11
                                )    Chapter 11
TODD MEAGHER,                    )
                                )    Fort Worth, Texas
        Debtor.                 )    March 4, 2020
                                )    9:30 a.m. Docket
                                )
                                )    MOTION FOR RELIEF FROM STAY
                                )    FILED BY HEB GROCERY COMPANY,
                                )    LP (#22)
_____    )

                      TRANSCRIPT OF PROCEEDINGS
               BEFORE THE HONORABLE MARK X. MULLIN,
                  UNITED STATES BANKRUPTCY JUDGE.

APPEARANCES:

For the Debtor:             Mark A. Castillo
                            CURTIS CASTILLO, P.C.
                            901 Main Street, Suite 6515
                            Dallas, TX  75202
                            (214) 752-2222

Proposed Special Counsel    Gary L. Pate
to the Debtor:              THOMPSON COE, COUSINS, & IRONS,
                              LLP
                            1 Riverway, Suite 1400
                            Houston, TX  77056
                            (713) 358-6779

For HEB Grocery Company,    Jason M. Powers
LP:                         VINSON & ELKINS, LLP
                            1001 Fannin Street, Suite 2500
                            Houston, TX  77002
                            (713) 758-2522

For HEB Grocery Company,    Rebecca "Becky" Petereit
LP:                         VINSON & ELKINS, LLP
                            2001 Ross Avenue, Suite 3700
                            Dallas, TX  75201
                            (214) 220-7800
```

Recorded by:                    Karyn Rueter
                                UNITED STATES BANKRUPTCY COURT
                                501 W. 10th Street
                                Fort Worth, TX  76102
                                (817) 333-6038

Transcribed by:                 Kathy Rehling
                                311 Paradise Cove
                                Shady Shores, TX  76208
                                (972) 786-3063

                    Proceedings recorded by digital sound recording;
                      transcript produced by transcription service.

1           <u>FORT WORTH, TEXAS - MARCH 4, 2020 - 9:36 A.M.</u>

2           THE COURT:  The Meagher case.  I have a feeling this

3    one may take a little bit longer.  Is this going to take

4    longer in argument, do you think?

5           MR. POWERS:  I think it will, Your Honor.

6           THE COURT:  All right.

7           MR. POWERS:  It might take a few minutes.

8           THE COURT:  Why don't we come back to this one, try

9    to clear out much of the courtroom.  Thank you.

10      (Recess from 9:37 a.m. to 10:26 a.m.)

11          THE COURT:  All right.  We are now back to the

12   Meagher case.

13          MS. PETEREIT:  Good morning, Your Honor.  Good to see

14   you.

15          THE COURT:  Good morning.

16          MS. PETEREIT:  Becky Petereit with Vinson & Elkins

17   appearing on behalf of HEB Grocery Company, the Movant.  And

18   I'd like to introduce the Court today to my partner, Jason

19   Powers, who's the lead attorney on the file and will be

20   addressing the Court today.

21          THE COURT:  All right.  Good morning to you.

22          MR. POWERS:  Good morning, Your Honor.  Your Honor,

23   HEB is --

24          THE COURT:  Oh, we'll go ahead and have appearances

25   first.

1           MR. POWERS:  Thank you, Your Honor.

2           THE COURT:  Yes.

3           MR. CASTILLO:  Good morning, Your Honor.  Mark

4    Castillo of Curtis Castillo on behalf of the Chapter 11

5    Debtor.  Mr. Todd Meagher, the Debtor, is also in the

6    courtroom, and also Mr. Gary Pate is here from -- from

7    Houston.

8           MR. PATE:  Yes.

9           THE COURT:  All right.

10          MR. PATE:  Good morning, Your Honor.

11          MR. CASTILLO:  And he is admitted in the Northern

12   District.

13          THE COURT:  All right.

14          MR. CASTILLO:  Good morning.

15          THE COURT:  All right.  And I appreciate you all

16   waiting.  It's the consumer day.  I feel badly for a lot of

17   the parties that have to be in court when they really need to

18   be at work, and so I like to try to get them so they can be

19   back to their jobs that they desperately need to be at.  So, I

20   appreciate your patience in going through that last --

21          MR. POWERS:  Certainly, Your Honor.

22          THE COURT:  All right.

23          MR. POWERS:   And we appreciate your making time for

24   us.

25      Your Honor, HEB is currently engaged in litigation with

1   Mr. Meagher in the Southern District of Texas in Judge Lynn

2   Hughes' court, where HEB is pursuing injunctive relief against

3   the Debtor as well as his spouse and one of the companies that

4   he owns called MyStore, Incorporated.

5       That case, multiple summary judgments have been filed.

6   Discovery is complete.  The pleading deadline has long passed.

7   If trial is needed in the case, exhibit lists have been

8   submitted, witness lists have been submitted, *voir dire*

9   questions have been submitted, and jury charges have been

10  submitted.

11      But early last year, Judge Hughes indicated that he

12  thought most of the case could be decided on summary judgment

13  and directed the parties to file summary judgment papers.

14  Those have all been filed, everything has been submitted, and

15  it's all ripe for ruling.

16          THE COURT:  So, is the request basically just to

17  allow the United States District Judge to just rule on the

18  summary judgment that's under advisement?

19          MR. POWERS:  That's correct, Your Honor. We --

20          THE COURT:  Anything further that you're seeking

21  today?

22          MR. POWERS:  I think that we'd like to go ahead and

23  see if you could let Judge Hughes wrap up the case, because we

24  think he's on the verge of doing so.  And I can give the Court

25  some background on the development of this litigation, if it

1   would be helpful.

2           THE COURT:  Sure.  It would be.

3           MR. POWERS:  Just to give you some information here,

4   HEB holds trademarks on the words *Mi Tienda*, Spanish for My

5   Store.  They use those in connection with two stores in

6   Houston, plus branded food products that they sell at HEB

7   Markets and Central Markets around the state.  Those marks

8   have been in continuous use since 2005.  In federal trademark

9   parlance, they are incontestable, meaning they can only be

10  challenged under narrow grounds.

11      Mr. Meagher filed applications for a trademark for MyStore

12  and MyStore.com in September of 2015.  He held this domain

13  name, MyStore.com, and it's one of many website ideas that he

14  has in various stages of development.  Part of his business is

15  coming up with an idea for an Internet-based business and

16  fleshing it out and trying to see if he can sell it to someone

17  who will operate it as a business.

18      When that trademark application popped up, HEB saw it, saw

19  that he was demonstrating the sale of food-related products on

20  this website, and thought there was an opportunity for

21  confusion, and so HEB filed an opposition in the Patent and

22  Trademark Office to that trademark application.  And that

23  resulted in a contested preceding in the Trademark Trial and

24  Appeals Board, but after that contest got underway, I think

25  Mr. Meagher did not care for the way it was developing and he

1  began trying to find ways to wire around it.

2     He filed a new set of trademark applications in 2017.

3  Then he withdrew all of the trademark applications and filed

4  new applications in his wife's name in 2017.

5     HEB became concerned this was turning into a game of

6  Whack-a-Mole and filed the lawsuit in Judge Hughes' court in

7  September of 2017, seeking an injunction against any

8  infringement of HEB's marks.

9     Mr. Meagher answered -- well, he and his wife and his

10  company answered and filed counterclaims there in Judge

11  Hughes' court.  After a year there, though, he began looking

12  for other alternatives again.  He filed new trademark

13  applications with the TTAB -- or, the PTO, in December of

14  2018.  And then in March of last year, Mr. Meagher hired two

15  more law firms, one to represent his wife and company and to

16  try to assert new claims after the pleadings deadline had

17  already passed.

18     The other law firm filed a challenge to HEB's trademarks

19  over in the Trademark Trials and Appeals Board.  That

20  proceeding has been suspended in favor of the Southern

21  District proceeding.

22     And then, in August, Mr. Meagher had another one of his

23  company's, GHER Solutions, LLC, file a lawsuit against HEB

24  here in the Northern District.  And Judge O'Connor concluded

25  that that was related to the Southern District case and

1  ordered the cases to be consolidated.

2      As we got to December, Judge Hughes ruled on Mr. Meagher's

3  counterclaims against HEB, concluding that he had no grounds

4  for his argument that it was all harassment and vexatious

5  litigation and that sort of thing.  And then he said he would

6  be deciding HEB's motions after the consolidation was

7  effected.  And, of course, right after that happened, Mr.

8  Meagher had law firm number two, I think it was, file a motion

9  to recuse Judge Hughes on behalf of his other company,

10  MyStore, Incorporated.  That was denied in January.

11      So, later in January, this bankruptcy petition was filed

12  by I think now a fourth separate law firm in our fourth

13  separate forum that the Meaghers have initiated, trying to

14  slow this down.

15      So, our position here is that the Court has the authority

16  to modify the stay and allow this case to proceed under

17  Section 362.  The case is ready to go to trial if it needs to

18  go to trial at all, but I think Judge Hughes has indicated he

19  believes most of these issues are questions of law and can be

20  decided rapidly on papers, and it wouldn't interfere with the

21  bankruptcy in any event.  Even if the judge were to conclude

22  that a trial is required, he has told the parties it's a two-

23  day trial, and counsel for Mr. Meagher has agreed with that

24  proposition.

25      So, there are -- in terms of what the factors are, in the

1    *Choice ATM* case and cases like it, talk about when you lift

2    the stay, the fact that you've got judicial economy here

3    favoring Judge Hughes completing a case that he's very well

4    familiar with.  He's read briefs in this case; he's had

5    multiple motions; he's had evidentiary hearings.  Mr. Meagher

6    has testified in this courtroom on multiple occasions.  He is

7    very familiar with the case facts, having sat in it for two

8    years.  Won't interfere with the bankruptcy.  Not seeking any

9    monetary damages.  We're just seeking injunctive relief

10    against Mr. Meagher.  This looks like -- a lot like the

11    *Dominic's Restaurant* case or the *Consolidated Distributors*

12    cases, cases where trademark injunction relief is seen fit to

13    operate outside the context of the bankruptcy.

14        I'm happy to respond to any arguments that Debtor would

15    like to propose, but I think that's my general pitch.

16            THE COURT:  All right.  Thank you.  Mr. Castillo?

17            MR. CASTILLO:  Your Honor, I want to start with

18    fixing a bunch of misimpressions of what is going on in the

19    underlying case.  Mr. Gary Pate can speak more elegantly and

20    eloquently about those issues because he has been in the

21    litigation.

22        The litigation started in September of 2017.  MSJ has been

23    filed for two years.  The Debtor believes that this case is

24    not near a resolution.  This is not a very quick and easy and

25    cheap MSJ ruling that we are expecting.  Both parties -- and

1  the Court has -- and the Trial Court has even recognized, the

2  parties, one or both of them, are going to appeal this to the

3  Fifth Circuit.

4      THE COURT:  What's wrong with just allowing the

5  District Court to make his ruling and then the parties will at

6  least see where the litigation is at that point?  What's wrong

7  with at least modifying the stay to allow that to occur?

8      MR. CASTILLO:  So, the Debtor's position is that they

9  still want to get some discovery in.  The --

10     THE COURT:  I understand that.  But with respect to

11 summary judgment, if the district judge is -- has it under

12 advisement and there's no further pleadings or argument to be

13 made to the district judge for the resolution or at least

14 ruling on the summary judgment, what's the harm in letting

15 that proceed?  Shouldn't the Court give the Southern District

16 judge the deference to conclude what he's prepared?  We don't

17 want to start over here, do we?

18     MR. CASTILLO:  Well, no, we don't need to start over

19 here.  From the Debtor's perspective, he has a buyer and has

20 other offers.  Mike Lindell is the MyPillow gentleman that

21 bought MyStore.com, the domain, and is interested in the

22 Debtor's trademark and is using it just in the Debtor's common

23 use of MyStore.

24     THE COURT:  Wouldn't it be -- but even he would need

25 to know what the ruling is going to be, doesn't he?  I mean,

1    isn't HEB entitled to have a ruling on its position one way or

2    the other?

3          MR. CASTILLO:  Well, and it can do that through a

4    more streamlined process, we think, here.  If this Court rules

5    -- like the U.S. Patent and Trademark Office has already

6    indicated there is no likelihood of confusion.  So if this

7    Court ends up giving a declaratory judgment that there is no

8    likelihood of confusion, like the USPTO has already decided,

9    then the Debtor can do a motion to sell or a plan to sell his

10   trademark and common use IP rights.

11         THE COURT:  Let me make sure I understood.

12         MR. CASTILLO:  Yes.

13         THE COURT:  I think I may have misunderstood you.

14   You said that if this Court determines that there's not a

15   confusion.

16         MR. CASTILLO:  The Debtor could do that through a

17   declaratory --

18         THE COURT:  In other words, so you're asking -- the

19   Debtor would be asking this Court to actually, then, start

20   over to determine whether or not there could be confusion?

21   Isn't that something that's already before --

22         MR. CASTILLO:  Well, --

23         THE COURT:  -- the district judge in Houston?

24         MR. CASTILLO:  -- it would be -- if the Debtor were

25   to do that, the Debtor believes it would be more streamlined.

1          THE COURT:  How so?  I mean, again, --

2          MR. CASTILLO:  Sure.

3          THE COURT:  -- just help me with that very narrow

4    issue on it seems like shouldn't the District Court rule on

5    what it's had under advisement?  Isn't that the most judicial

6    economy way to proceed?  And then let the chips fall where

7    they may.  Maybe not modify the stay for any further action,

8    just to see what the District Court does.  Parties can then

9    analyze what their next potential move might be, file

10   appropriate papers, and proceed at that point.

11      But doesn't it make sense to at least allow that ruling to

12   come down, since there's no further action that needs to be

13   taken by either side for that ruling?  And who knows when the

14   ruling would be.  It may be a year from now.  We wouldn't

15   know.

16          MR. CASTILLO:  I think the Debtor's position is the

17   concern on the what-ifs and the what-nexts.  The what-ifs are

18   -- the Debtor's position is we are not prying for a ruling on

19   an MSJ, that he would incur $50,000 in legal fees from Houston

20   litigation counsel.

21          THE COURT:  How?  How?  If it's under advisement,

22   there's nothing left to do but for the district judge to issue

23   a ruling?

24          MR. CASTILLO:  The --

25          THE COURT:  And if the district judge issues the

1  ruling, if the Court were to, say, grant -- because I think

2  the motion that was filed, it was a little broader than what I

3  may have mentioned to Mr. Power.  I think it did say, Allow

4  the district judge to rule on summary judgment and proceed to

5  trial.

6          MR. CASTILLO:  Uh-huh.  Yes.

7          THE COURT:  But my question for you, and then I'll go

8  back to Mr. Power, is:  --

9          MR. CASTILLO:  It would streamline it.

10         THE COURT:  -- I get the allow the district judge to

11 rule on summary judgment, just because we don't want to start

12 over from scratch.  At least, I don't think that would make

13 much sense to start over from scratch.  Allow the district

14 judge to enter his ruling.  Again, what's the harm?  What's

15 the cost?  Why shouldn't the Court at least, at a minimum,

16 modify the stay to allow the district judge in Houston just to

17 enter his ruling?

18         MR. CASTILLO:  Yes, Your Honor.  And I'm going to

19 respond, but I'm also going to let Mr. Pate indicate, because

20 he is closer to the action.

21         THE COURT:  Understood.

22         MR. CASTILLO:  But it's my understanding the Debtor's

23 position is we would like to ask the -- if we are proceeding

24 in the Houston state court, District Court, we'd like to ask

25 for discovery to be expanded to allow deposition prior to an

1    MSJ ruling.  We would like the U.S. --

2        THE COURT:  Why?  Well, I guess we'll let Mr. Pate

3    answer that.  I don't understand why that would be necessary.

4        MR. CASTILLO:  And also to allow the USPTO's survey

5    that shows no likelihood of a confusion to be considered by

6    the Court before the MSJ, which is not currently allowed.  So

7    they would incur those fees of trying to get that before the

8    Court before ruling.

9        THE COURT:  So, I take it, then, that at least the

10   Debtor's position is that there is more activity that's

11   necessary prior to the Court just simply issuing its ruling?

12       MR. CASTILLO:  That's right, Your Honor.

13       THE COURT:  Okay.

14       MR. CASTILLO:  And Mr. Pate, if you want to expand on

15   that.  I do have a little bit more to say, but --

16       MR. PATE:  Thank you, Your Honor.

17       THE COURT:  Yes.

18       MR. PATE:  If I could just interject a few things.

19   Actually, Mr. Meagher, MyStore, and his wife had filed motions

20   for summary judgment long before HEB ever filed a motion for

21   summary judgment.  They have been pending for approximately,

22   as best as I can count, a little over two years and haven't

23   been ruled on.

24      And the Court asked a very good question:  Why not just

25   lift the stay and allow the judge to rule and those issues are

1   resolved?  We have no faith, we have no confidence that those

2   issues are going to be resolved anytime soon.  Plus, --

3          THE COURT:  Well, then, what's the harm?  If the

4   Court says, District Judge, you may rule, and if the district

5   judge sits on it for a year and a half, what's the harm?

6          MR. PATE:  Well, the harm is actually to Mr.

7   Meagher's most valuable asset.  He has pending before the

8   United States Patent and Trademark Office his trademark

9   application for MyStore.com, which he owned for approximately

10  seven years, and --

11         THE COURT:  But --

12         MR. PATE:  -- he has reapplied for under the same

13  exact use and commerce.

14         THE COURT:  So, --

15         MR. PATE:  Yes?

16         THE COURT:  So, help me out.  So, what is Mr. Meagher

17  doing or what does he intend to do to prod along the ruling on

18  apparently his summary judgment motions, which I -- that

19  wasn't my understanding, but I'll take your word for it that

20  --

21         MR. PATE:  Right.

22         THE COURT:  -- that they are pending.  Can't he --

23         MR. PATE:  We have tried everything for years now to

24  try to push along our motion for summary judgment.

25         THE COURT:  What's preventing him from doing that

1  now, is --

2              MR. PATE:  I don't know of a way to --

3              THE COURT:  There may be a stay issue, but --

4              MR. PATE:  -- to get a federal judge in Houston to

5  move along on our motion for summary judgment.  I have clients

6  all the time say, Well, Mr. Pate, can't you get the judge to

7  rule on my motion?  And it's kind of like, You don't want to

8  do that with a federal judge, say --

9              THE COURT:  And I get -- and I thoroughly hear you on

10 that.

11             MR. PATE:  Yes.

12             THE COURT:  And I certainly don't want to have the

13 district judge believe that any of us are saying anything

14 close to that.

15     My question is very narrow.  Wouldn't -- if there are

16 summary judgments pending -- be it by the Debtor, by HEB --

17 and there's nothing further that needs to be presented to the

18 district judge to rule on those, what's the harm in making

19 sure that the district judge knows that the stay doesn't

20 prevent him from simply ruling on those motions?  Maybe not

21 doing anything else, but simply ruling on those motions.

22 What's the harm in modifying the stay to allow the Court to at

23 least just rule on whatever summary judgment motions he has

24 pending before him?

25             MR. PATE:  I really don't know how to answer that, in

1    all candor, Your Honor, what would be the harm in that.  I

2    don't think the judge would rule on them, because our motions

3    have canceled out their motions and vice versa.  I think the

4    case needs to be tried in a two-day trial, to tell you the

5    truth.

6         THE COURT:  Well, doesn't he have to dispose of the

7    summary judgment motions before he sets it for trial?

8         MR. PATE:  I would assume so.

9         THE COURT:  And that's the point.  So, if that's --

10   if he must, number one, resolve the or at least dispose of the

11   summary judgment motions one way or the other, and if they're

12   disposed in a manner that doesn't resolve all the matters and

13   issues before the Court, then the next step is setting it for

14   trial.  That may be, and I'm not ruling or don't take my

15   comments as leaning one way or the other, but once that

16   occurs, if the [District] Court then rules, and if [this]

17   Court just simply allowed the stay to be modified to allow

18   that event to occur, what's the harm, then, in having the

19   parties come back to say -- and I don't know what the parties'

20   position would be -- modify the stay to allow the trial to go

21   forward?  Or whatever other rights and remedies that the

22   Debtor or HEB may pursue.

23        MR. PATE:  I think my fear is, Your Honor, if there

24   was some kind of order from this Court saying, We're lifting

25   the stay for the Houston court to rule on all pending summary

1   judgment motions, just as ours have been pending for years,

2   nothing would happen and Mr. Meagher will have no resolution

3   for the next couple years.

4          THE COURT:  Well, if I don't lift the stay, he's got

5   no resolution for the next couple years.  So I'm not sure I

6   understand the logic of the point.

7          MR. PATE:  Right.  And then, if the judge were to,

8   for instance, because he's favorable to HEB, he says his best

9   friend is the CEO of HEB, and he rules in favor of their

10  motion for summary judgment but ignores ours that have been

11  pending for two years, this is going to go up for the next

12  year and a half before the Fifth Circuit.

13         THE COURT:  Isn't that going to happen anyway?

14  Eventually, doesn't -- eventually, doesn't this have to get to

15  a trial with whatever appeal rights are out there?  So, --

16         MR. PATE:  Yes.  Eventually, I believe --

17         THE COURT:  And the way I see the --

18         MR. PATE:  I believe --

19         THE COURT:  The way I see the motion is it's let's

20  start the process.  That's at least how I think, I mean,

21  unless I'm totally misreading the motions.  That's what I'm

22  getting.  It's let's start the process.  Let's --

23         MR. PATE:  And my one other concern, my one other

24  concern is that HEB is glad for this litigation in Houston to

25  drag on and drag on because it ties up his application before

1  the United States Patent and Trademark Office, --

2          THE COURT:  Well, let me --

3          MR. PATE:  -- which is his most valuable asset.

4          THE COURT:  I'm sorry.  Let me play devil's advocate.

5          MR. PATE:  Okay.

6          THE COURT:  If HEB wanted it to drag on, drag on,

7  then why in the world did they file the motion to lift stay to

8  push it forward?

9          MR. PATE:  Well, I'm not sure, in all honesty, if the

10  stay were to be lifted forward and push forward the motions

11  for summary judgment, that that would speed anything up, to

12  tell you the truth, with this lawsuit going on for three years

13  and as little accomplished in the three years as has been

14  accomplished.

15          THE COURT:  And, again, and I could be missing it, so

16  if you'll help me out here.  It seems as though the Debtor is

17  wanting to push forward the litigation.  If that's the case,

18  I'm not sure why the opposition to the stay motion, because

19  that's sort of what the stay motion requests, is allow the

20  litigation to proceed.

21          MR. PATE:  I think what the Debtor wants, ideally, is

22  for there to be an adversary proceeding here where we can get

23  this resolved in two days' time, a trial, so he can get this

24  application pushed forward at the United States Patent and

25  Trademark Office and get his trademark back, which is his most

1  valuable asset, and then pay -- pay off his creditors.

2          THE COURT:  Well, that was the question I asked Mr.

3  Castillo.  Is it really the Debtor's hope or intent to start

4  over from day one by filing a new case, a new lawsuit in this

5  case, when all that has already occurred in the Federal

6  District Court in Houston?

7      (Counsel confer.)

8          MR. PATE:  Your Honor, can --

9          THE COURT:  Take your time.  Sure.

10      (Counsel confer.)

11      MR. CASTILLO:  Your Honor, just to answer your

12  pending question more fully, would it be okay if the Debtor

13  just answered it briefly?  Would --

14          THE COURT:  No.

15          MR. CASTILLO:  No?  Okay.

16          THE COURT:  No.  It's a preliminary lift stay.

17          MR. CASTILLO:  Yes, Your Honor.  The Debtor currently

18  does not wish to litigate because of the costs.  He does want

19  a breathing spell.  You know, --

20          THE COURT:  Again, and I thoroughly get that

21  argument.  And that's what at least I would have -- what I was

22  anticipating would be the argument from the Debtor's side, is

23  we need a breathing spell from going to trial.  Whether that's

24  true or not, I don't know.  That's just, reading the papers,

25  that's what I was gathering.

1      Why does the Debtor need a breathing spell from just

2   knowing what the starting gate is, and that's basically the

3   District Court's ruling --

4           MR. CASTILLO:   Yeah.

5           THE COURT:   -- on papers that are currently before

6   him?  There's no breathing spell necessary.  That's something

7   that's going to have to be ruled upon.

8      And I hear Mr. Pate saying maybe an adversary could be

9   filed in this Court.  But I can tell you how reluctant I would

10  be in starting from scratch when my Article III federal

11  district judge has been living with this for two years.  Why

12  would I want to start over from scratch on something that I

13  might not even have constitutional or statutory authority to

14  even enter final judgments?  Why would I even go down that

15  road, as opposed to saying start back, you know, go back

16  there?

17     And, again, the way I read the motion is allow the summary

18  judgments just to be ruled upon, if and when they're ruled

19  upon.  It may be next week.  It might be in three years.  We

20  don't know.  We have no idea.  But it would simply -- right

21  now, I'm guessing the District Court is saying, I can't rule,

22  given the pendency of the stay.  But just allow the stay --

23  or, allow the summary judgment ruling to occur.  Everyone then

24  has whatever rights they have:  appeal rights, motions for

25  reconsideration rights, and all that.  But the clock for those

1   to start wouldn't start, potentially, until the stay is lifted

2   -- further modified to allow that, if there is a breathing

3   spell issue that the Debtor can articulate and makes sense as

4   to why there should be a further breathing spell from

5   restarting that clock.

6        MR. CASTILLO:  Okay.

7        THE COURT:  And that's going to be a question I'm

8   going to have for Mr. Powers, is what's wrong with simply

9   modifying the stay to allow summary judgment to proceed, and

10  then we'd come back if and when necessary?

11       MR. CASTILLO:  Just for that ruling, come back for

12  anything further?

13       THE COURT:  And that's why I keep asking you and Mr.

14  Pate what's the harm in that, because I don't see where

15  there's a dime that needs to be spent for that.

16       MR. CASTILLO:  If you would give me just a moment,

17  Your Honor, one more moment, so I can confer?

18       THE COURT:  Of course.

19       MR. CASTILLO:  Thank you, sir.

20       THE COURT:  You can confer, and then we'll go back

21  and I'd love to hear Mr. Powers' argument on -- or, response

22  to that issue and question.

23     (Pause, 10:50 a.m. to 10:51 a.m.)

24       MR. CASTILLO:  Your Honor, my understanding from the

25  Debtor is the concern is that we don't want to hold up the

1   rulings, so that does comport with what you're suggesting,

2   provided that the Debtor isn't locked into perhaps just

3   waiting for the MSJs to possibly sit longer, because he does

4   need resolution and does want to get the USPTO to approve, et

5   cetera.

6        So, if it's open to, you know, no prejudice to the Debtor

7   moving to transfer or in filing a motion for sale or filing

8   its own dec action or those kinds of things, then that would

9   give the Debtor some relief that he knows it's just not going

10  to languish throughout eternity.  So maybe that's something

11  there, Your Honor.

12       And if I may approach briefly, I want to hand you the

13  first amended complaint to talk briefly on that.  Because the

14  -- what we keep hearing is this is a very simple -- it's a

15  real quick MSJ.  It's just an injunctive relief.  But when we

16  look at the first amended complaint filed by the Plaintiff,

17  HEB, it requests relief that prevents Mr. Meagher from any

18  attempt to retain any part of his goodwill that was

19  misappropriated.  So it's taking possession of his property.

20  It says that it wants an accounting and that he shall pay over

21  the profits that he made over to HEB, and that the Court may

22  increase the profits as just under the circumstances of the

23  case.  So when they say they're not seeking damages, the word

24  damages isn't in the complaint, but surely the concept is.

25       They further ask for reasonable attorneys' fees, they ask

1   that they recover their costs, they ask for interest, and they

2   ask for all such other relief.  So, from the Debtor's

3   perspective, this is not a simple we're just -- we're just

4   asking for injunctive; we're not -- injunctive relief; we're

5   not asking for anything else.  So we think it does go beyond

6   that.

7       And Your Honor, I believe the *Sonnax* factors weigh in

8   favor of denying the lift stay at this time.

9           THE COURT:  Which factor?

10           MR. CASTILLO:  Almost all of them, Judge.  Whether

11   relief would result in a partial or a complete resolution of

12   the issues.  This would -- the lift of the stay, we do not

13   believe would resolve, you know, all of the issues, because it

14   would require the Debtor or up the opponent to appeal the

15   relief requested and would require litigation costs to be

16   incurred by the estate.  This Debtor drives a Kia, a 2015 Kia.

17   His daughter drives a 2010 Hyundai.

18           THE COURT:  And aren't all those issues going to

19   ultimately have to be resolved at some point?  I mean, HEB is

20   entitled to its day in court no less than Mr. Meagher is

21   entitled to having his day in court.  So, at some point, if

22   the parties can't resolve through agreements or settlements,

23   that's the way the system is.  The parties get to have their

24   day in court.  And the question, I think, is what's the proper

25   court?

1      And clearly, I can't -- of course, I say clearly -- it

2    certainly appears pretty clear that the proper court is the

3    Southern District of Houston, where this matter has been

4    pending for a couple of years.

5           MR. CASTILLO:  Your Honor, I guess my final thoughts

6    are, from the Debtor's position, he's just concerned.  This

7    litigation is why he's here.  He's borrowed almost half a

8    million dollars to fund this.  He owes a hundred thousand

9    dollars still in legal fees on top of that.  He's worried

10   about the cost of what happens next.

11          THE COURT:  And I get all that, and I understand

12   that.  But, again, to what end?

13      So, let's assume that I deny the motion today and say, no,

14   we're keeping everything pat.  What's the next step for the

15   Debtor?

16          MR. CASTILLO:  Well, that gives the Debtor time to

17   talk to his potential buyer and see if he can realize some

18   value from his --

19          THE COURT:  But the buyer is going to -- the issue

20   still needs to be resolved.  There's no buyer that's going to

21   come in and buy that -- possession of a lawsuit.  That's what

22   it is.

23          MR. CASTILLO:  If the Debtor could get the USPTO to

24   reissue the trademark, that would be helpful.

25          THE COURT:  Is there anything preventing him from

1    doing that now?  There may be.  I don't know.  There may be a

2    stay issue.

3          MR. CASTILLO:  They're holding due to the pending

4    litigation.

5          THE COURT:  No, but what's preventing -- what's the

6    legal -- what is preventing him legally from doing that now?

7    It may be the stay.  I don't know.

8          MR. PATE:  What's preventing him from getting his

9    trademark approved now by the USPTO?

10         THE COURT:  Yes.

11         MR. PATE:  Is this litigation going on in Houston.

12         THE COURT:  Well, again, then we're right back to

13   square one again.  Doesn't the litigation in Houston need to

14   get resolved one way or the other?

15         MR. PATE:  And the problem is HEB wants to drag this

16   out so that we cannot get the trademark approved at the United

17   States Patent and Trademark Office --

18         THE COURT:  Then why are you opposing the lift stay

19   motion?  If you don't want it dragged out, it seems like you

20   should have been thrilled that the motion was filed.

21         MR. PATE:  I would believe -- this is just my

22   thinking --

23         THE COURT:  Uh-huh.

24         MR. PATE:  -- that if the Court lifted the stay and

25   the pending dispositive motions were to be ruled on, I would

1  want our motions ruled on before HEB's motions are ruled on,

2  --

3          THE COURT:  Well, I --

4          MR. PATE:  -- because ours have been pending for over

5  two years.

6          THE COURT:  That's up to the judge.

7          MR. PATE:  Yes.  Yes.

8          THE COURT:  Isn't it?

9          MR. PATE:  Yeah.  Ultimately.

10         THE COURT:  Yes.  Ultimately.  All right.  All right.

11 Mr. Powers?

12         MR. POWERS:  Your Honor, there was a lot in there

13 that I didn't particularly agree with, but let me focus on the

14 issue that the Court raised, which is:  Is there any reason

15 why the Court shouldn't lift the stay for purposes of deciding

16 the submitted motions?  That's not what we had asked for, but

17 I think it's an elegant solution, Your Honor.

18         THE COURT:  What's that?  Now, say that again.  I'm

19 sorry.

20         MR. POWERS:  That lifting the stay for purposes of

21 deciding the submitted motions, --

22         THE COURT:  Okay.  That --

23         MR. POWERS:  -- I think that would be perfectly fine,

24 because I think Judge Hughes has already intimated that he

25 believes the case will be wrapped up on summary judgment

1    motions.  And if there is something left to decide, I think it

2    would be a fairly narrow issue, and we can come back to the

3    Court to decide what's the best way to deal with whatever that

4    narrow issue would be.

5        But I think what we're really seeing here, the reason you

6    can't get an answer to the question of what's the harm in

7    doing it that way, the real harm from their perspective is

8    that they want to take this motion away from Judge Hughes.

9    Judge Hughes has already issued a ruling -- by the way, Mr.

10   Pate keeps saying that they haven't ruled on their summary

11   judgment motions.  The judge did rule on their summary

12   judgment motions, in December.  He denied all of them.  And

13   the only motion that's left to be decided is HEB's motion.

14   The Court said that he was going to wait until the new

15   Northern District suit was consolidated into the Southern

16   District, so that barrier is now gone because Judge O'Connor

17   did move it down.  And they have since dismissed that extra

18   claim.

19       So, really, Judge Hughes is ready to go.  And I think if

20   we can just go ahead and get that motion ruled on, then we

21   will very likely be done.

22       The alternative to lifting the stay and allowing Judge

23   Hughes to deny -- to address the motions is that we're

24   starting over.  And we're starting over here with a new court

25   that hasn't had exposure to the briefing, exposure to the case

1   facts, over this very long period of time.

2       And I don't blame Mr. Meagher for thinking that he'd be

3   better off if he had more discovery that Judge Hughes has

4   already refused to grant, if he had experts that Judge Hughes

5   has said were not timely designated, if he had more evidence

6   that Judge Hughes has said is not pertinent to the claims that

7   are before him.  I don't blame him for thinking that, but the

8   fact is what he wants to do is take a matter that has already

9   been submitted to a federal court and move it to a different

10  judge, I don't think for any reason other than he doesn't care

11  for his chances down in Houston.  And because the litigation

12  there doesn't really affect the estate assets, it's not one

13  that I think this Court really wants to get in front of and

14  try to take control of away from Judge Hughes.

15          THE COURT:  All right.  Any brief reply or response?

16  You don't need to if you don't have one.

17          A VOICE:  (faintly)  No.

18          THE COURT:  I think we've -- I'll tell you what.  I'm

19  going to -- the Court is going to take about a ten-minute

20  break, allow you all to chat with your client.  I'll come back

21  out and ask any final comments, and then the Court will rule.

22  How's that?

23          MR. CASTILLO:  Appreciate you very much.

24          THE COURT:  All right.  The Court will take about a

25  ten-minute break.

1    (A recess ensued from 10:59 a.m. until 11:18 a.m.)

2         THE CLERK:  All rise.

3         THE COURT:  Thank you.  You may be seated.  We're

4    back on the record in the Meagher case.

5         MR. CASTILLO:  Thank you, Your Honor.

6         THE COURT:  Mr. Castillo?

7         MR. CASTILLO:  Thank you very much, Your Honor, for

8    the time.  So, streamlining, here is where we are.  The Debtor

9    does oppose a lift of the stay, but would be less concerned if

10   the stay lift was tailored in such a way that the stay were

11   lifted if the District Court could rule promptly without any

12   further hearings or discovery or other costs incurred by the

13   Debtor.  So that if it really is just we're going to get a

14   real quick ruling on a bunch of MSJs and a bunch of other

15   motions, then that doesn't cause the Debtor to incur

16   litigation costs and it gives him less heartburn.

17        THE COURT:  All right.  Mr. Powers, any response?  I

18   don't see how we could possibly tell the district judge how

19   promptly to rule.

20        MR. POWERS:  I think that's right, Your Honor.  I

21   wouldn't purport to give the Court guidance on how the Court

22   should communicate with one of his brethren.  But I think the

23   notion of saying that there should be a lift of the stay for

24   submitted motions and limited to that would be perfectly fine.

25   And I don't know if there's some other way to communicate to

1  the Court a desire for urgency, but I think the Court has

2  already indicated his desire for urgency.

3         THE COURT:  All right.  The Court has reviewed the

4  motion, which was at Docket 22, as well as the response filed,

5  the exhibits that were filed, the appendices that were filed,

6  as well as the briefs that were filed.  And it does appear

7  that cause does exist to modify the automatic stay, given the

8  advanced stage of the litigation in the Southern District

9  Court, the knowledge and expertise that's already been

10 obtained by the Southern District Court with respect to the

11 disputed facts and legal issues.

12    The Southern District Defendants have tried a number of

13 times to remove the active litigation from the Southern

14 District Court and to stall litigation, it appears, without

15 much success.

16    It does appear from the motion that HEB does seek

17 injunctive relief and not monetary damages against the Debtor,

18 and it would appear that a modification of the stay would

19 benefit both the Debtor and creditors in this case.

20    So the Court is going to modify the automatic stay.  And

21 I'll try to make this as clear as I possibly can on the

22 record.  The Court is going to modify the automatic stay to

23 allow the United States District Court to enter rulings on any

24 dispositive motions that are currently pending before the

25 Court.  And if those rulings of those dispositive motions

1   result in what could be the entry of a final judgment, the

2   Court is also going to modify the stay to allow the entry of

3   the final judgment.

4   If, however, the resolution of the dispositive motions

5   does not finally or fully resolve all matters and that

6   additional items must be taken up in that Court, the stay will

7   remain in place, but this Court, to make it clear, will

8   entertain on an expedited basis motions by either HEB or the

9   Debtor for any and all types of relief, including but not

10  limited to motions to lift the stay to allow the Southern

11  District Court to enter scheduling orders, proceed to trial,

12  any of those things.

13  But what we'll do is require the parties to come back

14  here, just to make sure, in case there are items that the

15  Debtor could articulate -- for example, that he may need a

16  breathing spell before those costs start up -- or Mr. Meagher

17  may have motions that he would like to proceed with

18  expeditiously that HEB may oppose.

19  But I think that should get us -- at least get the process

20  started.  I think all parties have stated that the litigation

21  needs to proceed in order to end the logjam of what all the

22  parties are trying to do.  And it just seems that that's the

23  fairest way to proceed and perhaps is the only way to proceed.

24  Any questions on what is a bit of a rambling oral ruling?

25  I want to make sure the parties understand the Court's ruling.

1          MR. PATE:  Should we prepare a written order for the

2    Court?

3          THE COURT:  Yes.  I'm going to ask counsel for HEB to

4    prepare a form of order.  I would like to make sure that Mr.

5    Pate and Mr. Castillo at least approve it as to form.

6    Obviously, not as to content.  I know that the Debtor opposed

7    the motion, and the Court, so, to be clear, is granting in

8    part, denying in part the motion, and over -- and saying,

9    overruling in part the response, in that I'm only modifying

10   the stay.  But to be very, very clear, the District Court can

11   proceed with any and all dispositive motions currently before

12   the Court.  And if the resolution of those dispositive motions

13   are where the District Court believes the District Court can

14   then enter final judgment, the stay is modified to allow the

15   entry of the final judgment.  Anything short of that, that's

16   all the District Court should do, and that the parties will

17   need to come back here for further prosecution of those claims

18   in this -- in the Federal District Court.

19      Any questions on that?  All right.

20          MR. POWERS:  I don't think so, Your Honor.

21          THE COURT:  And if there's a dispute on the form of

22   order, we can take that up either through you can just contact

23   the Court, we could either have a conference call, or just

24   submit your own form of orders and the Court will ultimately

25   do its own.  But I'm going to try to be as clear as I can so

1    that the district judge in the Southern District knows and

2    understands at least what I'm trying to do.  Make sense?

3         MR. POWERS:  Yes, Your Honor.

4         MS. PETEREIT:  Yes, Your Honor.

5         THE COURT:  All right.  With that, Court is adjourned

6    until 1:30.

7         MR. PATE:  Thank you, Your Honor.

8         MR. CASTILLO:  Thank you, Your Honor.

9         MS. PETEREIT : Thank you, Your Honor.

10      (Proceedings concluded at 11:24 a.m.)

11                --oOo--

12

13

14

15

16

17

18

19

20                 CERTIFICATE

21     I certify that the foregoing is a correct transcript from
the electronic sound recording of the proceedings in the

22   above-entitled matter.

23 **/s/ Kathy Rehling**                  **03/09/2020**

24 _____   _____
Kathy Rehling, CETD-444                Date

25   Certified Electronic Court Transcriber

1                                        INDEX

2    PROCEEDINGS                                                        3

3    WITNESSES

4    -none-

5    EXHIBITS

6    -none-

7    RULINGS                                                            31

8    END OF PROCEEDINGS                                                 34

9    INDEX                                                              35

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25