| | |
|---|---|
| Stephanie D. Curtis<br> Texas State Bar No. 05286800<br>Mark A. Castillo<br> Texas State Bar No. 24027795<br>Christopher L. Harbin<br> Texas State Bar No. 24083134<br>Robert C. Rowe<br> Texas State Bar No. 24086253<br>Curtis \| Castillo PC<br>901 Main Street, Suite 6515<br>Dallas, Texas  75202<br>Telephone: 214.752.2222<br>Facsimile:  214.752.0709 | Gary L. Pate<br> Texas State Bar No. 24029763<br>Thompson Coe, Cousins, & Irons, LLP<br>1 Riverway, Suite 1400<br>Houston, Texas 77056<br>Telephone: 713.358.6779<br>Facsimile:  713.403.8299<br><br>SPECIAL LITIGATION COUNSEL FOR DEBTOR IN POSSESSION |

COUNSEL FOR DEBTOR IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CHAPTER 11 |
| TODD MEAGHER, | § § | CASE NO. 20-40208-11 |
| DEBTOR. | § § | |

### CHAPTER 11 DEBTOR'S MOTION TO SELL AND ASSIGN CERTAIN INTELLECTUAL PROPERTY RIGHTS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES

HEARING DATE ON SUCH SALE IS SET FOR MAY 13, 2020 at 1:30 P.M., WHICH IS AT LEAST 21 DAYS FROM THE DATE OF SERVICE HEREOF. NO OBJECTION TO SUCH SALE WILL BE CONSIDERED UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 501 W. 10TH STREET, ROOM 128, FORT WORTH, TEXAS 77102 AT LEAST 4 DAYS IN ADVANCE OF SUCH HEARING DATE.

ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.

IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.

**TO THE HONORABLE MARK X. MULLIN,
UNITED STATES BANKRUTPCY JUDGE:**

NOW COMES TODD MEAGHER ("Meagher" or "Debtor"), the Debtor-in-Possession in the above-captioned Chapter 11 case (the "Bankruptcy Case"), and respectfully files this motion (the "Motion") pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code"), and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to sell and assign certain intellectual property rights (as defined below) free and clear of all liens, claims, and encumbrances.

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A)(N) and (O). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for relief are sections 105 and 363 of the Bankruptcy Code.

## BACKGROUND

3. Since commencing this Bankruptcy Case on January 15, 2020, the Debtor continues to operate his businesses and manage his properties as debtor and debtor in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

4. The Debtor has been an independent software developer and Internet Business developer since 1994, is engaged in the development, acquisition and operation of Internet business software and intellectual property rights since 2004, and has conducted his business, primarily in Tarrant County. The Debtor maintains a home office in Keller, Texas.

5. As this Court is aware, the Debtor is a defendant and counter-claimant in ongoing litigation with HEB Grocery Company, LP ("HEB") in the U.S. District Court for the Southern

District of Texas. In that case, HEB complains of alleged trademark infringement by the Debtor and other related claims. However, none of HEB's claims contest title to any trademarks whatsoever. On March 11, 2020, this Court granted HEB *very* limited relief from the automatic stay for the sole purpose of obtaining a ruling on its Motion for Summary Judgment. At oral hearing, HEB represented to the Court that such a ruling was "imminent."

6. Instead, on March 30, the District Court vindicated all of Debtor's concerns regarding HEB's stay relief. Rather than ruling on HEB's Motion for Summary Judgment, the District Court set *another* pre-trial scheduling conference for June 25, 2020. This will be the **eleventh** such hearing and will require the Debtor to incur additional attorneys' fees as well as travel to Houston again to hash out further pre-trial motions and schedule further discovery.

## RELIEF REQUESTED

7. The Debtor cannot afford to continue litigation with HEB at all, much less while this Bankruptcy Case is pending. To obtain a much-needed capital infusion, the Debtor asks for the Court's authority to enter into the attached Intellectual Property Purchase and Assignment Agreement (the "Purchase Agreement"), marked **Exhibit A.** Also attached hereto and marked **Exhibit B** is the Declaration of Todd Meagher in support of the Motion.

8. Through the Purchase Agreement, the Debtor intends to sell his IP Rights[1] to GHER Solutions, LLC ("GHER"). As HEB's claims are for alleged trademark infringement—no causes of action purport to cloud, encumber, or otherwise contest title to the IP Rights—the Debtor can confidently represent to the Court that the IP Rights he intends to sell are free and clear of any liens or encumbrances.

9. The proposed purchaser, GHER, is an unsecured creditor in this Bankruptcy Case.

---

[1] As defined in Ex. A, Recital A.

GHER is owned by Debtor's son, Nickolas Meagher. Debtor owned GHER until 2011, when he sold the company to his son, Nickolas Meagher. To date, Debtor does not own or hold any interest in GHER but Debtor has worked as an independent contractor with GHER on various occasions. Since 2011, Debtor also licensed the IP Rights to GHER, which it continues to actively use in its business.

10. Shortly after HEB sued the Debtor, GHER provided Debtor with a loan to defray the Debtor's litigation costs. That loan, which remains partially unpaid, shall be forgiven pursuant to the Purchase Agreement, with the remainder of the purchase price to be paid via cash. To protect future marketability of the IP Rights, neither the Debtor nor GHER wish for the purchase price to be made public. However, the Debtor will disclose the purchase price to any interested party requesting it, including the Court, the U.S. Trustee's office, the U.S. Patent & Trademark Office, and any creditor in this Bankruptcy Case.

11. GHER's offer will expire on May 31, 2020 and time is therefore of the essence. The Purchase Agreement was negotiated and executed at arm's length, in the ordinary course of the Debtor's business, and approval of the sale will benefit the Debtor's estate by providing significant income to Debtor's estate whilst eliminating a large portion of Debtor's unsecured claim liability.

## BASIS FOR RELIEF

**A.    The Purchase Agreement is an "Ordinary Course of Business" Transaction.**

12. Section 363(c) of the Bankruptcy Code provides that a debtor "may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1). A transaction is in the ordinary

course of business if it is "of the sort commonly undertaken by companies in [the debtor's] industry" and it does not subject a hypothetical creditor "to economic risk of a nature different from those he accepted when he decided to extend credit." *In re Roth Am., Inc.*, 975 F.2d 949, 952–53 (3rd Cir. 1992).

13. Selling, licensing and assigning intellectual property rights is in the ordinary course of the Debtor's business. It provides an important source of funding so as to allow the Debtor to continue his operations. The Debtor and similar companies in the industry often sell and assign intellectual property rights through purchase agreements substantially similar to the Purchase Agreement. Accordingly, the Debtor respectfully submits that the Court should approve the sale and assignment of the intellectual property rights defined in the Purchase Agreement (the "IP Rights") as an ordinary course transaction under section 363(c)(1) of the Bankruptcy Code.

**B. The Sale and Assignment of the IP Rights is an Exercise of the Debtor's Sound Business Judgment.**

14. The Debtor believes that selling the IP Rights is in the ordinary course of business. If however, the sale and assignment were deemed to occur outside the ordinary course of business, the Debtor, out of an abundance of caution, seeks approval of the sale and assignment of the IP Rights pursuant to section 363(b) of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

15. Bankruptcy Code section 363(b) does not specify a standard for determining when it is appropriate for a court to authorize the use, sale, or lease of property of the estate; however, bankruptcy courts have required that the authorization of such use,

sale, or lease of property of the estate out of the ordinary course of business be based upon sound business justification. *See Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc., et al. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."); *see also In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011); *In re Cowin*, No. 13-30984, 2014 WL 1168714, at *38 (Bankr. S.D. Tex. Mar. 21, 2014). Once the Debtor articulates a valid business justification, "[t]he business judgment rule is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re S.N.A. Nut Co.*, 86 B.R. 98 (Bankr. N.D. Ill. 1995); *see also In re Integrated Res., Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992); *In re Johns- Manville Corp.*, 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) (". . . a presumption of reasonableness attaches to a Debtor's management decisions.").

16. The Debtor has a sound business justification for selling the IP Rights under the terms of the Purchase Agreement. The Debtor is depending on the funding raised from selling the IP Rights in order to continue his operations. If the Debtor is not allowed to sell the IP Rights, it will deprive the Debtor's estate of much needed capital, which allows for the continuation of the Debtor's business operations.

C. **The Court May Authorize the Sale and Assignment Free and Clear of All Liens.**

17. Section 363(f) allows the Debtor to sell and assign the IP Rights free and clear of any interest in the IP Rights if:

(1) applicable nonbankruptcy law permits sale of such property free and clear

of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in a bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f) (emphasis added).

18. There are no creditors with any liens on or interests in the IP Rights, and the Debtor does not expect any secured party to object to the Motion.

19. The Debtor is not aware of any party asserting a lien on the IP Rights. To the extent any such lien exists, the Debtor submits that any such lien, claim, or encumbrance will be adequately protected by attachment to the net proceeds of the sale and assignment, subject to any claims and defenses that the Debtor may possess with respect thereto and/or the Debtor will obtain the consent of the party holding the lien, claim or encumbrance.

20. Accordingly, the Debtor requests authority to sell the IP Rights to GHER free and clear of all liens, claims, and encumbrances, with such liens, claims, and encumbrances attaching to the proceeds of the sale and assignment of the Intellectual Property Rights.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

21. Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to maximize value for his estate. Accordingly, the Debtor respectfully requests that the Court

waive the fourteen-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

22. Notice of this Motion shall be given to (a) the U.S. Trustee; (b) all known creditors; (c) the United States Patent and Trademark Office; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002 as of the time of service. Due to the nature of the relief requested herein, the Debtor submits that no other or further notice need be provided.

## CONCLUSION

23. Debtor respectfully requests that this Court enter an Order authorizing him to sell and assign the IP Rights to GHER Solutions, LLC pursuant to the Purchase Agreement free and clear of all liens, claims, and encumbrances; and authorizing all necessary actions by all parties including but not limited to the Debtor, GHER, the U.S. Patent & Trademark Office, and Trademark Trial & Appeals Board, to effectuate these transactions; and granting such other and further relief as may be just and proper.

Dated: April 13, 2020  Respectfully submitted,

*/s/Mark A. Castillo*
Stephanie D. Curtis
Texas State Bar No. 05286800
Mark A. Castillo
Texas State Bar No. 24027795
Robert C. Rowe
Texas State Bar No. 24086253
CURTIS | CASTILLO PC
901 Main Street, Suite 6515
Dallas, Texas 75202
Telephone: 214.752.2222
Facsimile: 214.752.0709
Email: scurtis@curtislaw.net
mcastillo@curtislaw.net
rrowe@curtislaw.net

**COUNSEL FOR
DEBTOR IN POSSESSION**

### CERTIFICATE OF SERVICE

This is to certify that, on April 13, 2020, a true and correct copy of the foregoing document, was served via the Court's CM/ECF service system and/or to all parties in the attached service matrix and the United States Patent and Trademark Office.

*/s/Robert C. Rowe*
Robert C. Rowe

INTELLECTUAL PROPERTY PURCHASE AND ASSIGNMENT AGREEMENT

This Intellectual Property Purchase and Assignment Agreement (the "Agreement") is made as of April 13, 2020 (the "Effective Date), between Todd Meagher ("Meagher"), and GHER Solutions, LLC, a Delaware Limited Liability Company registered to conduct business in Texas as a foreign entity ("GHER").

RECITALS

A. Meagher is the owner of the federally registered trademarks Registration Certificate Numbers 3,776,817, 3,647,253, 3,712,651 and their associated goodwill, software patents US Patent Numbers 9,442,626 and 8,346,575, and common law trademark rights and pending trademark registration applications Serial Numbers 88216119 and 88843232 for the marks MyStore and MyStore.com and their associated goodwill. (the "IP Rights")

B. GHER is a licensee and user of the IP Rights.

C. GHER is an unsecured creditor in the Meagher Chapter 11 bankruptcy.

D. GHER wishes to acquire Meagher's rights in the IP Rights, and Meagher wishes to sell such rights to GHER on the terms and conditions set forth below.

AGREEMENT

THEREFORE, in consideration of the payment of the purchase price by GHER to Meagher, the sufficiency of which consideration is hereby acknowledged, GHER and Meagher hereby agree as follows:

1. ASSIGNMENT.

Meagher hereby sells, assigns, conveys and transfers to GHER Meagher's entire right, title and interest in and to the IP Rights, together with all goodwill associated therewith, for use and registration by GHER.

2. PURCHASE PRICE.

The purchase price for the IP Rights is US$600,000.00 which is payable by GHER to Meagher as follows: the forgiveness of GHER's $400,000.00 creditor claim and $200,000 in cash, together (the "Purchase Price").

3. PAYMENT SCHEDULE.

Payment for the IP Rights will be made as follows:

(a) Upon the issuance of an Order by the **UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS FORT WORTH DIVISION**


EXHIBIT A

authorizing Meagher to sell and assign the IP Rights to GHER Solutions, LLC. pursuant to this Agreement, free and clear of all liens, claims, and encumbrances, GHER will withdraw its $400,000.00 creditor claims in the Meagher Chapter 11 bankruptcy.

(b) Upon (a) the successful issuance of trademark registration certificates of the pending trademark registration applications Serial Numbers 88216119 and 88843232 and the successful assignment of those trademark registration certificates as well as the trademark Registration Certificate Numbers 3,776,817, 3,647,253, 3,712,651, and (b) the successful assignment of software patents US Patent Numbers 9,442,626 and 8,346,575 to GHER Solutions, LLC, GHER will transfer the remaining $200,000.00 to an account designated by Meagher.

4. MEAGHER'S COVENANTS.

Meagher covenants and agrees that he:

a. will not contest GHER's full and complete ownership of the IP Rights for any service or product, including the rights to use, license the use of and/or register the IP Rights for any service or product; and

b. will not use or seek to register the IP Rights for any service or product.

5. TERRITORY: It is understood and agreed by GHER that Meagher makes no representation or warranty that Meagher holds rights in the IP Rights outside the United States and Meagher shall have no liability to GHER, its successors, assigns or licensees arising from the services or products bearing the IP Rights outside the United States.

6. MEAGHER'S REPRESENTATIONS AND WARRANTIES. Meagher warrants and represents to GHER that as of the Effective Date:

a. Meagher has full right and authority to enter into this Agreement and to consummate the transaction contemplated hereby.

b. Save for the Court Approval as outlined in Section 3(a), above, any and all consents and approvals which may be required in order for Meagher to enter into this Agreement or consummate the transaction contemplated hereby have been obtained. This Agreement and all documents required hereby to be executed by Meagher are and shall be valid, legally binding obligations of and enforceable against Meagher, its successors and assigns in accordance with their terms. Neither the execution of this Agreement nor the consummation of the transaction contemplated hereby will be in violation of any judgment, order, permit, writ, injunction or decree of any court, commission, bureau or agency to which Meagher is subject or by which Meagher is bound, or constitute a breach or default

under any agreement or other obligation to which Meagher is a party or otherwise bound.

c. To the best of Meagher's knowledge, he is the owner of all right title and interest in the IP Rights.

d. To the best of Meagher's knowledge, there is no past due fee or payment owing in the respective registries relating to the IP Rights. Meagher agrees, however, that should any payment or fee incurred prior to the Effective Date become known to Meagher or GHER, Meagher will pay such fee to the respective registry or to GHER as mutually agreed by the parties.

7. GHER'S REPRESENTATIONS AND WARRANTIES.

GHER represents and warrants to Meagher that as of the Effective Date:

a. GHER is a corporation duly organized and in good standing under the laws of Delaware. GHER has full right and authority to enter into this Agreement and to consummate the transaction contemplated hereby. All requisite corporate action has been taken by GHER in connection with the entering into of this Agreement and the instruments referenced herein and the consummation of the transaction contemplated hereby. The person signing this Agreement on behalf of GHER is duly authorized to do so.

b. Any and all consents and approvals which may be required in order for GHER to enter into this Agreement or consummate the transaction contemplated hereby have been obtained. This Agreement and all documents required hereby to be executed by GHER are and shall be valid, legally binding obligations of and enforceable against GHER, its successors and assigns in accordance with their terms. Neither the execution of this Agreement nor the consummation of the transaction contemplated hereby will be in violation of any judgment, order, permit, writ, injunction or decree of any court, commission, bureau or agency to which GHER is subject or by which GHER is bound, or constitute a breach or default under any agreement or other obligation to which GHER is a party or otherwise bound.

8. ASSIGNMENT OF EXISTING LICENSES.

Meagher, as IP Rights licensor, shall assign any and all of his rights and interests in the any license agreements for use of the IP Rights to GHER as of the Effective Date.

9. MISCELLANEOUS.

a. This Agreement shall be governed by the substantive laws of the State of Texas, applicable to agreements fully executed and performed in said

state. With respect to any action commenced by Meagher against GHER or by GHER against Meagher for any breach hereof or otherwise commenced with respect hereof, each of the parties hereby irrevocably and unconditionally submits to personal jurisdiction and venue in the Federal courts in the Northern District of Texas. Each of the parties agrees that it will not bring any action in any other jurisdiction. The parties consent to service of process by certified mail, return receipt requested. For the purposes of this Paragraph 9, "final judgment" means a final judgment from which no appeal or right of appeal exists in any U.S. Federal court. A final judgment against a party in any such action or proceeding shall be conclusive, and may be enforced in other jurisdictions by suit on the judgment, a certified or true copy of which shall be conclusive evidence of the fact and the amount of indebtedness or liability of or other remedy awarded against such party therein described. In addition, a non-final judgment may be enforced in other jurisdictions to the extent enforceable by law.

b. All notices, payments, and statements that are required or may be given, shall be in writing, in the English language, and either:

i. personally delivered;

ii. sent via certified air mail with a return receipt requested; or

iii sent via electronic means which produces a written record of the notice given.

Notices shall be addressed as follows:

If to Meagher:
Todd Meagher
2101 Legacy Court
Keller, Texas 76248
toddme@gher.com
817-403-1188

If to GHER:
GHER Solutions, LLC
550 Reserve Street
Southlake Texas, 76092
corp@gher.com
817-403-4794

Notices shall be effective upon receipt. The notice, addresses, email addresses and phone numbers may be changed by giving notice in accordance with this Agreement.

c. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns. Either party may assign its rights and obligations under this Agreement without obtaining the consent of the other party, provided that the transferee expressly agrees in writing to assume and be bound by the obligations and conditions of this Agreement. Any such sale, assignment or transfer not in compliance with the foregoing shall be null and void.

d. If either party wishes to issue an official press release or other formal public announcement to any public or trade media concerning the contents or fact of this Agreement, then such party shall first consult with the other party and both parties shall then cooperate to specify and mutually agree upon the contents, time and place of such press release or public announcement.

e. This Agreement contains the entire agreement of the parties hereto respecting the subject matter hereof and supersedes all prior agreements, understandings, negotiations, communications and discussions, whether oral or written, of the parties hereto, pertaining to such subject matter. No amendment, supplement, modification or waiver of this Agreement shall be binding unless set forth in writing and signed by the parties hereto.

f. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision, nor shall such waiver constitute a continuing waiver unless otherwise expressly provided in a written document signed by the parties hereto.

g. This Agreement may be executed in counterparts, each of which, or any combination of which when signed and delivered by all of the parties, shall be deemed an original, but all of which when taken together shall constitute one agreement.

10. TERMINATION.

Due to the potential fluctuation in the value of the IP Rights over time as well as GHER's available resources to purchase the IP Rights, this Agreement to purchase Todd Meagher's IP Rights terminates on May 31, 2020 if not agreed to and executed by all parties.

IN WITNESS WHEREOF, the parties have executed this Agreement on April 13, 2020, effective as of the Effective Date.

_____        _____
Todd Meagher                          GHER Solutions, LLC.
                                      Managing Menber

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| TODD MEAGHER | § § | CHAPTER 11 |
| 2101 LEGACY COURT<br>KELLER, TX 76248 | § § § | CASE NO. 20-40208-11 |
| DEBTOR. | § § | |

### DECLARATION OF TODD MEAGHER IN SUPPORT OF
### DEBTOR'S MOTION TO SELL

1. My name is Todd Meagher, the Debtor in the above-referenced Chapter 11 proceeding. All statements made herein are within my personal knowledge, true and correct. I make this Declaration in support of Debtor's Motion to Sell.

2. I am an independent software developer and Internet business developer and have been engaged in the development, acquisition, and operation of Internet business software and intellectual property rights since 1994.

3. As part of my software and Internet business development, I develop, register, license and sell trademarks and patents. Currently, I am the owner of the federally registered trademarks Registration Certificate Numbers 3,776,817, 3,647,253, 3,712,651 and their associated goodwill, software patents US Patent Numbers 9,442,626 and 8,346,575, and common law trademark rights and pending trademark registration applications Serial Numbers 88216119 and 88843232 for the trademarks MyStore and MyStore.com along with their associated goodwill. (the "IP Rights").

4. I have licensed the aforementioned IP Rights to GHER Solutions, LLC, a Delaware Limited Liability Company ("GHER") since 2011.


EXHIBIT B

DECLARATION OF TODD MEAGHER                                                                 PAGE 1 of 3

5. I have received an offer from GHER to purchase the IP rights in the amount of $600,000.00, to be paid through a combination of the satisfaction of debt in the amount of $400,000.00 and cash or cash equivalents in the amount of $200,000.00.

6. I incorporated GHER Solutions, LLC on January 3, 2011. On May 25, 2011, I transferred 100% of its ownership to my son Nickolas Meagher. Currently, he is the sole managing member of the company. Since 2011, all tax filings show him to be GHER's sole owner. I have in the past provided software project management and development services to GHER as an independent contractor. I have also been the licensor of intellectual property used by the company and part of the Purchase Agreement.

7. Licensing and selling intellectual property rights is my ordinary course of my business. Such activities provide important sources of funding to allow me to continue my business operations. The Purchase Agreement, which I am seeking Court approval for, is typical for my business.

8. I believe the sale of the IP Rights is a sound business decision as it liquidates assets of my estate and would provide my business with additional liquid funding, which is especially important in light of the market uncertainty surrounding the current national pandemic. As GHER's offer expires on May 31, 2020, therefore the time to execute this Purchase Agreement is limited. I am therefore asking for expedited consideration of the sale by the Court so that I do not lose such a promising opportunity to acquire cash. It is my understanding that while GHER intends to continue the use some of the IP Rights for its own ventures, it has an opportunity to bundle the IP Rights with other intellectual property it currently owns and sell them. It is also my understanding that taking advantage of, and maximizing the value, of these opportunities is time sensitive.

9. On April 13, 2020, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct within my personal knowledge.

_____
Todd Meagher