VINSON & ELKINS LLP
Jason M. Powers (SB# 24007867)
Allison L. Fuller (SB# 24087547)
1001 Fannin Street, Suite 2500
Houston, TX 77002
Telephone: (713) 758-2522
Facsimile: (713) 615-5809
Email: jpowers@velaw.com
Email: afuller@velaw.com

Rebecca L. Petereit (SB# 24062776)
Matthew D. Struble (SB# 24102544)
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201
Telephone: (214) 220-7700
Facsimile: (214) 220-7716
Email: rpetereit@velaw.com
Email: mstruble@velaw.com

PIRKEY BARBER PLLC
Louis T. Pirkey (SB# 16033000)
Travis R. Wimberly (SB# 24075292)
Tyson D. Smith (SB# 24079362)
1801 East 6th Street, Suite 300
Austin, TX 78702
Telephone: (512) 322-5200
Facsimile: (512) 322-5201
Email: lpirkey@pirkeybarber.com
Email: twimberly@pirkeybarber.com
Email: tsmith@pirkeybarber.com

ATTORNEYS FOR HEB GROCERY COMPANY, LP

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | § | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| TODD MEAGHER | § | Case No. 20-40208-mxm11 |
| | § | |
| Debtor. | § | |

## HEB GROCERY COMPANY, LP'S RESPONSE IN OPPOSITION TO DEBTOR'S MOTION TO SELL AND ASSIGN CERTAIN INTELLECTUAL PROPERTY RIGHTS

HEB Grocery Company, LP, n/k/a H-E-B, LP ("HEB") files this response in opposition to Debtor Todd Meagher's Motion to Sell and Assign Certain Intellectual Property Rights (Dkt. 43) (the "Motion") to GHER Solutions, LLC ("GHER"). The proposed sale by the Debtor should be disapproved because (i) the sale is not being made in the ordinary course of business; (ii) the Debtor has not demonstrated a sound business justification for a sale; (iii) the proposed transaction appears calculated to interfere with pending federal court litigation in Houston; and (iv) there are serious questions about the completeness of the Debtor's disclosures with respect to his affiliated entities. Accordingly, HEB requests that this Court deny the Debtor's Motion.

**ARGUMENT**

**I.  The proposed sale of the Debtor's IP rights is not an ordinary-course transaction.**

Although the Debtor seeks the Court's approval of the proposed Purchase Agreement, the Debtor initially argues that the contemplated sale is an ordinary-course transaction and, therefore, could be carried out without Court approval under 11 U.S.C. § 363. Mot. ¶¶ 12–13. However, the Debtor's representations to this Court show that the proposed sale is not being made in the ordinary course of business.

Although the Bankruptcy Code does not define "ordinary course of business," bankruptcy courts typically follow "a two-step inquiry for determining whether a transaction is in 'the ordinary course of business': a 'horizontal dimension' test and a 'vertical dimension' test." *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) (citations omitted). The horizontal inquiry is "whether, from an industry-wide perspective, the transaction is of the sort commonly undertaken by companies in that industry," and the vertical inquiry "analyzes the transactions from the vantage point of a hypothetical creditor and [the inquiry is] whether the transaction subjects a creditor to economic risk of a nature different from those he accepted when he decided to extend credit." *Id.* at 953 (explaining that "[t]he primary focus … is on the debtor's pre-petition business practices and conduct") (citations omitted); *see also In re Denton Cty. Elec. Coop.*, 281 B.R. 876, 882 (Bankr. N.D. Tex. 2002) (noting that the "two tests ordinarily applied to determine the ordinary course of business" are the "ordinary and normal course of business within the industry and expectations regarding the conduct of Debtor's business"). Applying these tests demonstrates that the Purchase Agreement is not an ordinary-course transaction.

1

### A. The transaction fails the horizontal and vertical tests because the Debtor claimed the IP rights make up the bulk of the estate.

While application of the horizontal test is not particularly straightforward in this case given that the Debtor is an individual rather than a company operating in a given industry, it is unquestionably not ordinary course for a company or an individual to sell its most valuable asset(s)—which the Debtor has claimed this intellectual property is. In prior filings, the Debtor told this Court that the alleged MyStore trademark he now proposes to sell is the "centerpiece of [the Debtor's] reorganization" and that the mark "dwarfs the value of other resources available to satisfy creditors."[1] With respect to the vertical test, a proposed sale of the bulk of a debtor's assets would not fall within the category of transactions a hypothetical creditor would reasonably expect the Debtor to engage in in the conduct of his routine business.

If one takes the Debtor at his word that this proposed transaction will strip the estate of its most valuable asset, the transaction necessarily exposes the Debtor's creditors to additional risk in the reorganization. It therefore cannot be an "ordinary course" transaction, and 11 U.S.C. § 363(c) is not applicable.

### B. The Debtor admits the proposed sale is an insider transaction, and the sale could be a sham transaction.

In addition to its unusual subject matter, the manner in which this proposed transaction has arisen is well outside the ordinary course of business. Although the Debtor claims this transaction "was negotiated and executed at arm's length, in the ordinary course of the Debtor's business," Mot. ¶ 11, and that "similar companies in the industry often sell and assign intellectual property rights through purchase agreements," Mot. ¶ 13, this proposed transaction is *not* an everyday, arm's-length market transaction. The transaction is with GHER, an entity that the Debtor contends

---

[1] *See* Dkt. 31 ¶¶ 7, 18.

is owned by his son—but which the Debtor himself founded and seems to be able to acquire, divest, fund, or draw on at will.

### 1. GHER is nothing more than Todd Meagher by another name.

In his Motion and supporting declaration, the Debtor claims that (i) GHER is "owned by Debtor's son, Nickolas Meagher,"[2] (ii) the Debtor transferred ownership of GHER to Nickolas Meagher in 2011 as its "sole managing member" and "[s]ince 2011, all tax filings show him to be GHER's sole owner,"[3] and (iii) the Debtor "does not own or hold *any interest* in GHER."[4]

The Debtor has regularly and recently testified to exactly the opposite. First, in August of 2019, Todd Meagher filed a lawsuit against HEB in the Northern District of Texas in the name of GHER (the "Northern District Litigation"),[5] and submitted a declaration in which he said: "In 2014, I reacquired the business from my son and became both a member and the managing member of GHER Solutions, LLC."[6] Second, in the litigation between the Debtor and HEB in Houston (the "Southern District Litigation"),[7] the Debtor gave sworn statements that he became both a member of GHER and its Chief Executive Officer and Custodian of Records in 2019, and that he

---

[2] Mot. ¶ 9.

[3] *See* Ex. B to the Debtor's Motion, "Declaration of Todd Meagher in Support of Debtor's Motion to Sell" (Dkt. 43-2), ¶ 6.

[4] Mot. ¶ 9 (emphasis added).

[5] *See GHER Sols., LLC v. HEB Grocery Co., LP* (Case No. 4:19-cv-00655-O), filed in the Northern District of Texas on August 21, 2019 (the "Northern District Litigation").

[6] In a declaration executed by Todd Meagher on September 30, 2019, the Debtor stated: "In 2014, I reacquired the business from my son and became both a member and the managing member of GHER Solutions, LLC. Also at that time, I began raising capital from outside investors and bringing in new partners." *See* N.D. Litig., Dkt. 10 at 19 ¶ 3.

As discussed in HEB's Motion for Relief from the Stay (Dkt. 22), after the Northern District Litigation was subsequently transferred and consolidated with the Southern District Litigation, GHER voluntarily withdrew its claim and was dismissed from the case. *Id.* at ¶¶ 11–13.

[7] *See HEB Grocery Co., LP v. Todd Meagher et al.*, Case No. 4:17-cv-02810 (the "Southern District Litigation"). As discussed in HEB's Motion for Relief from the Automatic Stay (Dkt. 22), in the Southern District Litigation, HEB alleges claims of trademark infringement, unfair competition, dilution, and unjust enrichment against the Debtor Todd Meagher, his wife Irene Alexis Meagher, and the Meaghers' company, MyStore, Inc., based on the defendants' unauthorized use of the MyStore marks. *See id.* at ¶¶ 3–10.

3

occupied those positions as recently as December 17, 2019.[8] Third, in a deposition by the Debtor in a related proceeding before the U.S. Trademark Trial and Appeal Board ("TTAB") in 2017, Mr. Meagher brushed all formalities aside, testifying: "Remember, I told you I'm GHER."[9]

Regardless of who owns or holds formal positions with GHER at any given moment, the Debtor has also characterized his relationship with GHER as being different from arm's length. For instance, in this very proceeding, the Debtor has characterized GHER as an insider in his statement of financial affairs and has claimed that GHER loaned the Debtor money to pay his litigation costs in the Southern District Litigation.[10] Second, the Debtor previously represented to both the Northern and Southern District courts that he has a "fiduciary duty" to GHER and that he personally controlled the decision to file the Northern District Litigation on GHER's behalf.[11]

It should therefore be no surprise that Judge Hughes in the Southern District Court observed from the bench that "GHER Solutions is operated at the discretion of Todd Meagher."[12]

### 2. The Debtor appears to arbitrarily move money and assets around his entities, and the Motion appears calculated to continue that pattern.

The Debtor represents that the proposed sale of the IP assets to GHER is necessary to "obtain a much-needed capital infusion." Mot. ¶ 7. It is not clear why the Debtor needs to obtain capital from GHER or how GHER would be in a position to provide capital. The Debtor admits that he has personally funneled $180,000 into GHER within the last year.[13] And as recently as

---

[8] *See* S.D. Litig., Dkt. 270 (Todd Meagher's Response to Management Order) at 4–11 ("Sworn Compliance Statement on Information Sought Concerning GHER Solutions, LLC") ¶¶ 2, 31; *see also* S.D. Litig., Dkt. 271 (GHER's Motion for Summary and Declaratory Judgment) at 3–4 ¶ 10 & *id.* at 9 ("Business Records Affidavit").

[9] *See* S.D. Litig., Dkt. 274, Ex. 2 (2017 TTAB Dep. Tr.) at 93:8.

[10] *See* Dkt. 24 (Debtor's Statement of Financial Affairs) at 3 ¶ 7; Dkt. 43 (Debtor's Motion to Sell) at ¶ 10.

[11] *See* N.D. Litig., Dkt. 10 at 8; S.D. Litig., Dkt. 270 at ¶ 10.

[12] *See* S.D. Litig., Dec. 4, 2019 Hrg. Tr. at 119:7–8.

[13] *See* Dkt. 24 at 3 ¶ 7 (listing payments totaling $180,000 purportedly made to GHER in February and March of 2019).

4

October of last year, the Debtor claimed to Judge O'Connor in the Northern District of Texas that GHER itself had an "urgent need" for resolution so it could raise "much needed capital."[14] If GHER has capital to provide to the Debtor, that capital may in actuality just be a part of the Debtor's own cash, temporarily parked outside the estate.

The confusion about which one has capital or needs capital at any given moment—the Debtor or GHER—fits an ongoing pattern. In the Southern District Litigation, the Debtor made contradictory representations regarding the ownership of certain internet domain names, alternatively and inconsistently alleging that such assets were owned by the Debtor or owned by GHER. The Debtor likewise made contradictory representations to the Southern District court regarding who as between he and GHER owed various debts—at times claiming GHER owed money to creditors, but then producing documents showing the monies borrowed had actually been received by the Debtor in his individual capacity, not by GHER.[15]

It is because of this habitual obfuscation that the Court should be wary of the Debtor's representations to this Court that there are purported "agreements" between himself and GHER, like an alleged licensing agreement to use the MyStore marks and a supposed loan from GHER to fund the Debtor's litigation activities. The Debtor has never produced documents to substantiate these alleged agreements. It is not clear they exist.

Given these facts, the supposed transaction between the Debtor and GHER is not entered into in the ordinary course of business and is far from arm's length.

---

[14] *See* N.D. Litig., Dkt. 13 (filed Oct. 23, 2019) at 2 (seeking a declaratory judgment against HEB on behalf of GHER and alleging that the Court should act quickly "due to the urgent need by GHER to obtain a resolution in order to raise much needed capital").

[15] *See, e.g.*, S.D. Litig., Dkt. 274 (HEB's Response to Todd Meagher's Response to Management Order) at 8–12 ("Appendix of Statements Submitted by Meagher that Contradict Prior Testimony and Record Evidence").

## II. There is no sound business justification given for the sale contemplated in the Motion.

The Debtor alternatively argues that the Court may authorize the sale of estate property outside of the ordinary course of business in cases where the proposed transaction is "based upon sound business justification." Mot. ¶ 15. The Debtor does not come close to meeting that standard.

First, the Debtor does not explain why he is engaging in the transaction. He offers nothing more than a conclusory assertion that the Debtor is "depending" on this sale to continue his "business operations." *Id.* ¶ 16. The Debtor does not describe what operations of the "business" are being conducted at this time, nor does he explain how the proceeds will be used. Indeed, the idea that the Debtor needs a capital infusion from GHER to carry out *his* "business operations" seems counterintuitive, since the Debtor claims that his income already comes from GHER for working as an independent contractor on *its* business operations.[16]

Second, the Debtor does not prove that the transaction is carried out on reasonable terms. The Debtor provides no evidence relating to the valuation of the assets embodied in the proposed Purchase Agreement. Given that the Debtor claims the IP assets in question are the most significant assets owned by the estate and the transaction is not at arm's length, this is troubling. Indeed, in this very case, the Debtor has claimed that just his purported "MyStore mark" would sell for $200,000 more than the amount he is now currently proposing as a price to be paid by GHER for that and a slew of other IP assets identified in the Motion.[17] HEB frankly questions whether the assets to be sold have any value at all, since the Debtor owns no trademark registrations for the claimed rights in the MyStore marks and has no evidence of any sales, customers, or cash flow from any business activities associated with the claimed IP. But whatever the true value of

---

[16] *See* Ex. B to the Debtor's Motion, "Declaration of Todd Meagher in Support of Debtor's Motion to Sell" (Dkt. 43-2), ¶ 6.

[17] *See* Dkt. 31 at ¶ 18 ("Meagher anticipates that a sale of his MyStore trademark could recover up to $800,000 for the estate."); *compare* Dkt. 43-1 at 1 §§ A & 2 (listing the purchase price for the "IP Rights" as $600,000).

these alleged assets is, the Debtor seeks a Court order that this transaction has a sound business justification, and such an order should be based on evidence, not unsubstantiated assertion. Here, there is no evidence of a business justification.

Third, the transaction appears to be intended to accomplish an improper purpose. Where a decision is made or an action is taken with an improper purpose, such as fraud, manipulation, or self-dealing, a debtor has not acted with a sound business justification. *Cf. Resolution Tr. Corp. v. Acton*, 844 F. Supp. 307, 315 (N.D. Tex. 1994) ("The business judgment rule is not a defense to allegations of fraud…. Neither is the business judgment rule a defense to allegations of self-dealing."). As explained further below, the Motion and the insider transaction contemplated thereby appears to be yet another attempt to take the issues in the Southern District Litigation out of Judge Hughes's hands.

### III. The Debtor has previously attempted to use his purported interest in GHER Solutions, LLC to oust the Southern District Court of jurisdiction.

The Motion appears to be the latest in a series of ill-fated, strategic attempts to upend the two-and-a-half-year-old Southern District Litigation in hopes that it will lead to the Bankruptcy Court taking the case away from Judge Hughes, despite the stay relief this Court has already granted.[18] Even if the requirements of section 363(b) of the Bankruptcy Code were satisfied, a debtor may not sell property of its estate if such sale is inconsistent with relief granted under subsection (c), (d), (e), or (f) of section 362 of the Bankruptcy Code.[19]

---

[18] *See* Order Granting in Part and Denying in Part HEB's Motion for Relief from the Automatic Stay to Proceed with Pre-Petition Claims for Injunctive Relief (Dkt. 39), whereby this Court ordered that the automatic stay is lifted to allow Judge Hughes to rule on any summary judgment motions that are currently pending and to enter a final judgment in the Southern District Litigation if the Southern District court's ruling on summary judgment motions enables that court to do so.

[19] *See* 11 U.S.C. § 363(d)(2); *see also In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("If the requirements in § 363(b) are satisfied, a proposed transaction is still subject to the requirements in 11 U.S.C. § 363(d) and (e). According to § 363(d), the use, sale or lease of estate property is authorized under § 363(b) 'only to the extent not inconsistent with any relief granted under section 362(c), 362(d), 362(e) or 362(f). . . .'").

In this instance, there is a substantial risk that the Motion and the transaction in question are intended to frustrate the stay relief already granted by this Bankruptcy Court. As HEB has demonstrated in a prior filing, the Debtor has attempted several times to move the dispute underlying the Southern District Litigation out of Judge Hughes's courtroom.[20] One of those attempts was the filing of a lawsuit in GHER's name in the Northern District of Texas, in which GHER/the Debtor claimed that GHER was already the real party in interest with respect to the trademark usage in dispute in the Southern District Litigation. This Motion similarly appears calculated to interfere with the Southern District Litigation by assigning the MyStore marks at issue in the Southern District Litigation to GHER "free and clear of all liens, claims, and encumbrances."[21] This is a transparent potential first step in the Debtor *again* attempting to wrest the trademark infringement case from the Southern District, even though the Debtor has previously claimed that he was prevented from assigning the MyStore mark to GHER due to the pendency of the Southern District Litigation.[22]

Separately, in an apparent attempt to garner sympathy over the Southern District Litigation, the Debtor claims that a ruling on HEB's pending summary judgment motion in the Southern District case has been delayed and that he needs more money to litigate there. Mot. ¶¶ 5–6. What the Debtor neglects to mention is that the Debtor himself has been driving additional delay and costs in the time since this Court's March 4, 2020 hearing on HEB's Motion for Relief from the

---

[20] *See* HEB's Motion for Relief from the Automatic Stay (Dkt. 22) at ¶¶ 11–15; *see also* March 4, 2020 Hrg. Tr. at 31:12–15 (The Court: "The Southern District Defendants have tried a number of times to remove the active litigation from the Southern District Court and to stall litigation, it appears, without much success.").

[21] *See* Ex. A to the Debtor's Motion, "Intellectual Property Purchase and Assignment Agreement" (Dkt. 43-1) (the proposed "Purchase Agreement") at 1 ¶ A ("Recitals"), listing the IP rights as including "common law trademark rights and pending trademark applications Serial Numbers 88216119 and 8884323 for the marks MyStore and Mystore.com and their associated goodwill."

[22] *See* S.D. Litig., Dkt. 270 at 4–11 ("Sworn Compliance Statement") ¶ 26 (claiming that "if not for this [Southern District] lawsuit, Todd Meagher would be able to assign to MyStore trademark to GHER" and that "until Todd Meagher is able to re-register that MyStore trademark it cannot be assigned to GHER Solutions").

8

Automatic Stay. After that hearing, the Southern District Court asked the parties to jointly submit a simple list of pending motions. The Debtor refused to agree to a list, and instead, directed his attorney to file *two* new summary judgment briefs (each denominated a "response" to the request for a list).[23] The Debtor's second attorney (who purportedly represents his wife and their MyStore company) filed a separate *third* response to Judge Hughes's request for a list of pending motions as well as a separate request for judicial notice of alleged "facts."[24] In each of these instances, HEB was forced to respond to the filings in the Southern District Litigation to correct misstatements made by the defendants, incurring additional cost.[25] The Southern District has now set a status conference, but it is not clear that conference would have been necessary without the Debtor's efforts to add even more briefing on matters that had long ago been submitted and argued.

**IV.    The record suggests that the Debtor has not fully and accurately disclosed his involvement and interest in other financial transactions.**

Finally, HEB notes that outside of the proposed sale of IP assets, there are other financial transactions in which the Debtor is apparently involved that raise additional questions regarding the nature of the Debtor's activities and his financial status.

In particular, the Debtor's financial dealings with another company, Zurra, Inc. ("Zurra"), are cloudy at best. The Debtor states to this Court that he owns 70% of Zurra, and that Zurra has made payments made to the Debtor's bankruptcy counsel on the Debtor's behalf.[26] The Debtor's statement of financial affairs does not describe when Zurra was first incorporated or any monies

---

[23] *See* S.D. Litig., Dkts. 294 & 298.

[24] *See* S.D. Litig., Dkts. 288 & 293. Counsel for Irene Alexis Meagher and MyStore, Inc. is listed as a creditor of Debtor in his filings before this Court. *See* Dkt. 2 (listing a claim for "legal services" by attorney Karen Tripp).

[25] *See* S.D. Litig., Dkts. 296, 297, & 299.

[26] *See* Dkt. 24 (Statement of Financial Affairs) at item 16 (listing Zurra as the payor on the payment to Curtis Castillo PC on January 14, 2010); *id.* at item 27 (listing a 70% ownership in Zurra); *see also* Dkt. 23 at item 19 (listing a 70% ownership interest in Zurra).

9

that the Debtor transferred to Zurra.[27] However, documents filed with the United States Securities and Exchange Commission ("SEC") show that Zurra was incorporated in 2019 and that Todd Meagher is not only the majority owner but also the Chief Executive Officer of the company.[28]

Zurra's disclosure to the SEC on Form D, which was filed and executed by the Debtor, discloses that Zurra raised $1,000,000.00 through equity sales by October 22, 2019.[29] If Mr. Meagher owns 70% of the equity in Zurra, and Zurra raised $1 million through equity sales (all during the last two years), it is surprising that Mr. Meagher has not disclosed any transfers to Zurra on his statement of financial affairs, where such transfers in the last two years ought to have been disclosed.[30] Given Mr. Meagher's habitual failure to document alleged loans and transfers between himself and GHER, one can hardly assume that his failure to disclose a transfer to Zurra means there have been no transfers to Zurra. The fact is that while the Debtor claims to be insolvent, there are apparently two companies he controls and has funded, Zurra and GHER, which are in inexplicably cash-rich positions. Before asking the Court to approve a transaction with one of these entities, the Debtor must justify the transaction with evidence.

## CONCLUSION

HEB respectfully requests that this Court deny the Debtor's Motion to Sell and Assign Certain IP Rights and grant HEB any other relief to which it may be entitled.

---

[27] *Id.*

[28] *See* Ex. 1 attached hereto (SEC Form D for Zurra, Inc., filed Dec. 26, 2019) at 1.

[29] *See* Ex. 1 at 3.

[30] HEB notes that Zurra does seemingly appear on the list of transfers within the past year on the statement of financial affairs filed by the Debtor. *See* Dkt. 24 at item 16. However, upon seeking clarification from the Debtor's counsel on this point, counsel for HEB was informed that Zurra actually paid an amount to Curtis Castillo PC on behalf of the Debtor (although the amount paid was a different amount than that listed). In any event, despite reaching out to the Debtor's counsel given these unclear and apparently incorrect disclosures, the statement of financial affairs has not yet been amended.

Respectfully submitted,

| | |
|---|---|
| */s/ Rebecca L. Petereit* | /s/ *Tyson D. Smith* |
| VINSON & ELKINS LLP | PIRKEY BARBER PLLC |
| Jason M. Powers | Louis T. Pirkey |
| State Bar No. 24007867 | State Bar No. 16033000 |
| Allison L. Fuller | Travis R. Wimberly |
| State Bar No. 24087547 | State Bar No. 24075292 |
| 1001 Fannin Street, Suite 2500 | Tyson D. Smith |
| Houston, TX 77002 | State Bar No. 24079362 |
| Telephone: (713) 758-2522 | 1801 East 6th Street, Suite 300 |
| Facsimile: (713) 615-5809 | Austin, TX 78702 |
| jpowers@velaw.com | Telephone: (512) 322-5200 |
| afuller@velaw.com | Facsimile: (512) 322-5201 |
| | lpirkey@pirkeybarber.com |
| Rebecca L. Petereit | twimberly@pirkeybarber.com |
| State Bar No. 24062776 | tsmith@pirkeybarber.com |
| Matthew D. Struble | |
| State Bar No. 24102544 | |
| Trammell Crow Center | |
| 2001 Ross Avenue, Suite 3700 | |
| Dallas, Texas 75201 | |
| Telephone: (214) 220-7700 | |
| Facsimile: (214) 220-7716 | |
| rpetereit@velaw.com | |
| mstruble@velaw.com | |

*Attorneys for HEB Grocery Company, LP*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 8, 2020, a true and correct copy of the foregoing was served via this Court's Electronic Filing System, which gives notice to all counsel of record.

    */s/ Matthew D. Struble*
    Matthew D. Struble